1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9             SOUTHERN DISTRICT OF CALIFORNIA
10
11   DOUGLAS J. CAMPION,                )    Case No. 09-CV-748-JMA(NLS)
                                        )
12                  Plaintiff,          )    **ORDER DENYING PLAINTIFF'S**
                                        )    **MOTION FOR CLASS**
13   v.                                 )    **CERTIFICATION AND DEFENDANT'S**
                                        )    **MOTION TO STRIKE (DOC. NO. 30 &**
14   OLD REPUBLIC HOME PROTECTION       )    **48)**
     COMPANY, INC.,                     )
15                                      )
                    Defendant.          )
16                                      )
                                        )
17   ─────────────────────────────     )

18         On May 28, 2010, Plaintiff Douglas J. Campion filed a motion for class

19   certification pursuant to Fed. R. Civ. P. 23.  (Doc. No. 30.)  Defendant Old Republic

20   Home Protection Company, Inc. filed an opposition to the motion (Doc. No. 47) and a

21   motion to strike the expert report submitted in connection with Plaintiff's motion (Doc.

22   No. 48) on August 18, 2010.  Plaintiff filed a reply in support of the motion for class

23   certification (Doc. No. 49) and an opposition to the motion to strike (Doc. No. 50) on

24   September 8, 2010.   Defendant filed a reply in support of the motion to strike on

25   September 14, 2010.  (Doc. No. 51.)  After the close of briefing, on November 5, 2010,

26   Plaintiff informed the Court of a recent class certification order issued in *Kaplan v.*

27   *Fidelity Nat'l Home Warranty Co.*, Superior Court of California, San Diego County, Case

28   No. 37-2008-0087962-CU-BT-CTL.  (Doc. No. 53.)

Pursuant to CivLR 7.1.d.1, both motions are suitable for disposition without oral argument.  After due consideration of the parties' briefs and evidentiary submissions and as set forth below, the Court DENIES Plaintiff's motion for class certification and DENIES Defendant's motion to strike.

## I.  INTRODUCTION

Defendant sells home warranty insurance policies to homeowners, pursuant to which it is obligated to repair or replace covered systems and appliances that become inoperable due to normal wear and tear during the term of the contract.  *Complaint*, ¶ 25.  Plaintiff purchased a plan from Defendant in April 2007.  *Declaration of Douglas J. Campion in Support of Motion for Class Certification ("Campion Dec.")*, ¶ 2.  In February 2008, he made a warranty claim regarding his garbage disposal.  *Id.* ¶ 3.  Defendant assigned Oasis Plumbing & Drain to respond to the claim.  *Id.*  As required by the warranty plan, Plaintiff paid Oasis $50 upon its technician's arrival at Plaintiff's residence and before commencing work.  *Id.*  The Oasis technician inspected the garbage disposal and told Plaintiff Oasis would call him to set up another time to replace it.  *Id.*  Oasis later called and informed Plaintiff that Defendant denied coverage because the garbage disposal was improperly installed.  *Id.*  Plaintiff hired another contractor to replace the garbage disposal at Plaintiff's expense.  *Id.*  The following month, Plaintiff made a second claim under his plan for problems he was experiencing with his electric range/oven.  *Declaration of Tammy Boggs in Support of Opposition to Motion for Class Certification ("Boggs Dec.")*, Ex. B (Transcript of Deposition of Douglas J. Campion ("Campion Depo.") pp. 28-30; ln. 7-7).  Another contractor responded to the claim, Plaintiff paid the $50 service fee, and the appliance was repaired to Plaintiff's satisfaction.  *Id.*

Plaintiff, on behalf of himself and the putative class members, alleges, *inter alia*, that Defendant fraudulently induced them to purchase warranty plans by misrepresenting that it would pay the cost of covered items under the home warranty plans when, in fact, it maintained policies, procedures and economic incentives to deny

legitimate claims or to shift the majority of the costs for repair or replacement work to the policyholder.   *Complaint*, ¶ 51 and 71.   The causes of action asserted include Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Violation of Cal. Civ. Code § 1790 (Consumer Legal Remedies Act ("CLRA")), Violation of Cal. Bus. & Prof. Code § 17200 (Unfair Competition Law ("UCL")), Violation of Cal. Civ. Code § 1710(1) (Intentional Misrepresentation & Concealment), and Violation of Cal. Civ. Code § 1710(4) (False Promise).   The proposed class consists of all persons who, during the period of approximately March 6, 2003 through the present, made a claim under a home warranty plan issued by Defendant.   *Id.* ¶ 15.

## II. LEGAL STANDARD

A class may be certified only if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  A class action may be maintained if Rule 23(a) and at least one of the following three conditions is satisfied: (1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b).

The party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001).  In this case, Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(3), which requires the Court find that the questions of law or fact common

09cv748-JMA(NLS)

1  to class members predominate over any questions affecting only individual members,

2  and that a class action is superior to other available methods for fairly and efficiently

3  adjudicating the controversy. The matters pertinent to these findings include: (A) the

4  class members' interests in individually controlling the prosecution or defense of

5  separate actions; (B) the extent and nature of any litigation concerning the controversy

6  already begun by or against class members; (C) the desirability or undesirability of

7  concentrating the litigation of the claims in the particular forum; and (D) the likely

8  difficulties in managing a class action.  Alternatively, Plaintiff seeks certification under

9  Fed. R. Civ. P. 23(b)(2), which requires that the party opposing the class acted or

10  refused to act on grounds that apply generally to the class, so that final injunctive relief

11  or corresponding declaratory relief is appropriate respecting the class as a whole.

12       When considering a motion for class certification, the Court must conduct a

13  "rigorous analysis" to ensure the prerequisites of Rule 23(b) are actually satisfied, not

14  just presumed from the pleadings.  *Dukes v. Walmart Stores, Inc.*, 603 F.3d 571, 581

15  (9th Cir. 2010) (*citing Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982)).  In

16  some instances, the pleadings will be sufficient to demonstrate whether a class should

17  be certified, but often courts are required to look "behind the pleadings" even to issues

18  overlapping with the merits of the underlying claims.  *Id.*  The U.S. Supreme Court has

19  cautioned against "conduct[ing] a preliminary inquiry into the merits of a suit" at the

20  class certification stage.  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 177 (1974).

21  *Eisen* does not, however, prohibit the Court from considering facts that are relevant to

22  the Rule 23 determination, even though the facts may also relate to the underlying

23  merits of the case.  *Dukes*, 603 F.3d at 586.  In fact, the Court must probe behind the

24  pleadings if doing so is necessary to make findings on the Rule 23 certification decision.

25  *Id.* at 589.  A court is not required to "unquestioningly accept a plaintiff's arguments as

26  to the necessary Rule 23 determinations."  *Id.*

27  //

28  //

09cv748-JMA(NLS)

# III.  DISCUSSION

## A.      Standing

As a threshold issue, Defendant argues Plaintiff's class definition is overbroad and includes putative class members who do not have standing, as required by Article III.  To meet the Article III standing requirement, a plaintiff must have suffered an "injury in fact" that is "distinct and palpable," the injury must be fairly traceable to the challenged action, and the injury must be likely redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).  An injury-in-fact must be "distinct and palpable," as opposed to "abstract," and the harm must be "actual or imminent," not "conjectural or hypothetical."  *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990) (internal quotation marks omitted).  An injury-in-fact, however, differs from a "legal interest."  An injury-in-fact need not be capable of sustaining a valid cause of action and may simply be the fear or anxiety of future harm.  For example, exposure to toxic or harmful substances has been held sufficient to satisfy the Article III injury-in-fact requirement even without physical symptoms of injury caused by the exposure, and even though exposure alone may not provide sufficient ground for a claim under state tort law.  *Id.* at 155 ("Our threshold inquiry into standing 'in no way depends on the merits of the [plaintiff's claim.]'" (*quoting Warth v. Seldin*, 422 U.S. 490, 500 (1975)). For purposes of determining standing, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party" (i.e., the class members).  *Warth*, 422 U.S. at 501.

"Generally standing in a class action is assessed solely with respect to class representatives, not unnamed members of the class."  *In re General Motors Corp. Dex-Cool Products Liability Litigation*, 241 F.R.D. 305, 310 (S.D. Ill. 2007).  It is not required that each member of a class submit evidence of personal standing. *See, e.g., Rozema v. The Marshfield Clinic*, 174 F.R.D. 425, 444 (W.D. Wis.1997) ("Those represented in a class action are passive members and need not make individual showings of standing."); *PBA Local No. 38 v. Woodbridge Police Dep't*, 134 F.R.D. 96, 100

1   (D.N.J.1991) ("Once it is ascertained that there is a named plaintiff with the requisite

2   standing, however, there is no requirement that the members of the class also proffer

3   such evidence."); *see also* Herbert B. Newberg & Alba Conte, *Newberg On Class*

4   *Actions* § 2.7 (4th ed. 2002) ("[P]assive members need not make any individual showing

5   of standing, because the standing issue focuses on whether the plaintiff is properly

6   before the court, not whether represented parties or absent class members are properly

7   before the court.").

8        Defendant does not question whether Plaintiff has standing to prosecute the

9   claims for monetary relief.  Instead, it focuses solely on the proposed class definition,

10  arguing it is overbroad and includes putative class members who lack standing.  This

11  argument touches on issues that are more appropriately addressed under Rule

12  23(b)(3)'s predominance requirement, which is discussed below.  The Court is satisfied

13  the standing requirement is met.

14       **B.    Rule 23(a) Requirements**

15       **1.    Numerosity**

16       Rule 23(a)(1) requires the members of a proposed class to be so numerous that

17  joinder of all of the class members would be impracticable.  Fed. R. Civ. P. 23(a).

18  "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience in

19  joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d

20  909, 913-14 (9th Cir. 1964) (*quoting Advertising Specialty Nat. Ass'n v. FTC*, 238 F.2d

21  108, 119 (1st Cir. 1956)).

22       There does not appear to be a dispute regarding whether the proposed class is

23  sufficiently numerous to satisfy Rule 23(a)(1).  "[T]here are hundreds of thousands of

24  customers who purchased home warranty plans and made claims during the period

25  March 6, 2003 through the present." *Declaration of Brett M. Weaver in Support of Class*

26  *Certification ("Weaver Dec.")*, *Notice of Lodgment*, Ex. 8.4, lines 7-9.  Joinder is

27  impracticable for such a large group.  The numerosity requirement of Rule 23(a)(1) is,

28  therefore, satisfied.

### 2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class."  Plaintiff contends the following issues of law and fact are common to the members of the proposed class:

– Each of the home warranty contracts is nearly identical and, therefore, the customers' rights and Defendant's obligations are nearly the same;

– Defendant's advertisements were disseminated via uniform written materials.  Plaintiff also alleges Defendant misrepresented facts about the warranty plans in the plan documents themselves, which were sent to each and every class member;

– Defendant ranks and rewards contractors the same way, meaning every contractor has the same financial incentive to deny claims, perform band-aid fixes, refuse to work on expensive jobs and gouge the customer;

– Defendant's uniform wrongful practices interfered with the class members' right to receive benefits under the plan.  Each member who made a claim faced the risk that Defendant's contractor would deny legitimate claims, perform cheap repairs, and punt on expensive jobs or upsell the customer on "non-covered charges."  Thus, Defendant breached the implied covenant of good faith and fair dealing and engaged in intentional conduct designed to deprive class members of benefits;

– If Plaintiff establishes liability, the Court can fashion equitable relief that benefits every class member equally, such as enjoining the continued use of wrongful business practices and ordering restitution for the amounts paid for policy premiums and service call fees.

Defendant counters Plaintiff has failed to demonstrate there are substantial questions common to the class because the fact Defendant has a policy of ranking contractors is neither wrongful nor unfair.  (*Opposition to Motion for Class Certification*, pp. 29-30.)  Plaintiff, it argues, cannot even demonstrate how the policy caused his own claim to be denied.  Furthermore, the putative class is comprised of individuals with both covered and denied claims, individuals who paid varying premium amounts for different levels of coverage, and individuals who paid different trade call fees to thousands of different contractors.  *Id.*

Defendant's arguments are more properly directed to a Rule 23(b)(3) inquiry as to whether common issues predominate over individual issues, which is addressed below.  Commonality under "Rule 23(a)(2) only requires there be *some* common issues

of fact and law." *Keilholtz v. Lennox*, 268 F.R.D. 330, 337 (N.D. Cal. 2010) (emphasis in original).  Here, each member of the proposed class made a claim under a home warranty plan obtained from Defendant and the claims made on their behalf in this case are based on a common theory of liability.  Thus, Rule 23(a)(2)'s commonality require-ment is satisfied.

### 3.   Typicality

Rule 23(a)(3) requires the claims or defenses of the representative parties be typical of the claims or defenses of the class.  Plaintiff contends the typicality require-ment is met because his claims arise from Defendant's uniform wrongful practice and course of conduct.  *Memorandum of Points & Authorities in Support of Class Certifica-tion*, pp. 17-18.  Plaintiff argues that whenever any homeowner made a claim, the contractor sent by Defendant had a financial incentive to deny claims, perform band-aid fixes, up-sell the customer or refuse to work on expensive jobs because of this uniform policy.  Thus, he alleges, regardless of the nature of the claims, each class member suffered the same type of injury and their causes of action are based on the same legal theories.  *Id.*

Defendant counters Plaintiff's claims are not typical of the putative class because he made two home warranty claims, one of which was covered and, thus, resulted in no injury, and the other of which is alleged to have been improperly denied.  *Opposition to Motion for Class Certification*, p. 29.  With regard to the latter claim, referred to as the garbage disposal claim, Defendant alleges Plaintiff fails to show the contractor had a financial incentive to deny the claim, perform a band-aid fix, or shift costs.  Defendant also points to circumstances relating to the purchase of the warranty plans.  Plaintiff purchased his plan directly from Defendant, and was exposed to different marketing materials than many of the class members, whose plans were purchased for them.  *Id.*

Rule 23(a)(3)'s typicality requirement provides that a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Keilholtz*, 268 F.R.D. at 337 (quotation omitted). The purpose of Rule

23(a)(3) is "to assure that the interest of the named representative aligns with the interests of the class."  *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The requirement is satisfied where the named plaintiffs have the same or similar injury as the unnamed class members, the action is based on conduct which is not unique to the named plaintiffs, and other class members have been injured by the same course of conduct.  *Id.*

Plaintiff and the putative class members' claims are based on the allegation Defendant sold home warranty policies by misrepresenting it would pay for claims covered under the policies and without adequately disclosing it utilized a system that weighs against claims being administered to the benefit of the homeowner.  The alleged injury is not the wrongful denial of benefits, but rather the risk each class member faced that Defendant's contractor would deny legitimate claims, perform cheap repairs or upsell the homeowner on "non-covered charges."  *Memorandum of Points & Authorities in Support of Class Certification,* p. 16.  The facts highlighted by Defendant that are unique to Plaintiff do not render his claims atypical from those of the putative class members under Ninth Circuit law.  Rather, these circumstances are relevant to the viability of the asserted legal theories, and whether the claims can be proved on a class-wide basis without examining the particular circumstances of each class member. These issues are, therefore, more appropriately addressed under Rule 23(b)(3)'s predominance requirement, which is discussed below.  For purposes of Rule 23(a)(3), Plaintiff's claims are "reasonably co-extensive with those of absent class members," and, thus, the typicality requirement is satisfied.  *Hanlon*, 150 F.3d at 1020.

### 4.    Adequacy of Representation

Rule 23 requires that a class be certified only if "representative parties will fairly and adequately protect the interests of the class."  Two questions must be resolved to determine legal adequacy: (1) does the named plaintiff or his counsel have any conflicts of interest with other class members and (2) will the named plaintiff or his counsel prosecute the action vigorously on behalf of the class?  *Id.*  Referencing the arguments

raised earlier regarding the differences between Plaintiff's claims and those of the class

members, Defendant contends Plaintiff is an inadequate representative.  *Opposition to*

*Motion for Class Certification*, p. 30.  Defendant further contends Plaintiff is an inade-

quate representative because he can not prove he suffered an injury (i.e., an improper

claim denial) because he threw away the garbage disposal.  *Id.*

These arguments are addressed below, in connection with Rule 23(b)(3)'s

predominance requirement.  There is no reason to believe either Plaintiff or his counsel,

who is not challenged, will not fairly and adequately represent and protect the interests

of the proposed class.

### C.    Rule 23(b)(3) Requirements

In order to certify a class under Rule 23(b)(3), Plaintiff must demonstrate: 1)

"questions of law or fact common to the members of the class predominate over any

questions affecting only individual members" and 2) a class action is "superior to other

available methods for the fair and efficient adjudication of the controversy."  *Mazza v.*

*American Honda Motor Co.*, 254 F.R.D. 610, 619 and 627 (C.D. Cal. 2008).  In order to

satisfy the predominance requirement, a plaintiff must demonstrate that the claims are

"capable of proof at trial through evidence that is common to the class rather than

individual to its members."  *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305,

311-312 (3rd Cir. 2008).  In considering the predominance factor, "the Court must first

examine the substantive issues raised by (p)laintiffs and second inquire into the proof

relevant to each issue."  *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251 (C.D.

Cal. 2006).

### 1.    Predominance

#### a.    Predominance of Legal Issues.

The application of a forum state's laws is presumed where the defendant has a

"significant contact or significant aggregation of contacts to the claims asserted by each

member of the plaintiff class...."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821

(1985).  In this case, the alleged wrongful practices originate from California.  As

1   Plaintiff points out, Defendant is a California corporation with its principal place of

2   business and headquarters in San Ramon, California.  *Memorandum of Points &*

3   *Authorities in Support of Class Certification,* p. 20.  Defendant's contractor representa-

4   tives supervise the third-party contractors from offices located in San Ramon.  *Id.*

5   Furthermore, Defendant sells three times as many home warranty plans to California

6   residents than it does to residents of any other state.  *Id.*  These facts are not contested.

7

8       "A federal court sitting in diversity must look to the forum state's choice of law

9   rules to determine the controlling substantive law."  *Mazza*, 254 F.R.D. at 620.  "Califor-

10  nia applies a three step governmental interest analysis to determine to which law to

11  apply."  *Id.*  (citation omitted)  The first step requires the proponent for foreign states'

12  law to identify the applicable rule of law in each potentially concerned state and show it

13  materially differs from the law of California."  *Id.*  After the proponent of foreign law

14  satisfies its burden, the second step requires that if the court finds a material difference

15  exists between the states' laws, it must "determine what interest, if any, each state has

16  in having its own law applied to the case....  Only if the trial court determines that the

17  laws are materially different and that each state has an interest in having its own law

18  applied ... must the court take the final step and select the law of the state whose

19  interests would be 'more impaired' if its law were not applied."  *Id.* (citations omitted).

20      The entirety of Defendant's argument against using California law is presented in

21  footnote 72 on page 17 of its opposition:

22          Plaintiff has failed to establish that California law can be applied to the
            claims of nonresident putative class members.  Old Republic's plans are

23          sold around the country in 30 states, with some states regulating the home
            warranty plans as "insurance," while others do not.  *See Declaration of*

24          *Gwen Gallagher in Support of Opposition ("Gallagher Dec."),* ¶ 4.  Conse-
            quently, states regulate the home warranty plans in a divergent manner

25          and it is inappropriate to assume that California law should be applied
            uniformly to the plans for a nationwide class of individuals.  *See also*

26          *Norwest Mortgage, Inc. v. Sup. Ct.*, 72 Cal.App.4th 214, 222-24 (1999)
            (holding the UCL did not apply to non-California residents in nationwide

27          class).

28  / /

Defendant fails to identify the applicable rule of law in each potentially concerned state or show these states' rules of law materially differ from the law of California.  Because Defendant has failed to satisfy its burden to do so, the Court is unable to proceed to steps two and three of a choice of law analysis.  Furthermore, the Court is satisfied Defendant has "significant contact or significant aggregation of contacts to the claims asserted" such that the application of California law can be presumed based on the uncontroverted evidence supplied by Plaintiff.

> **b.    Breach of Contract/Breach of Implied Covenant of Good Faith & Fair Dealing**

The elements of a cause of action for breach of contract under California law are: 1) the existence of a contract; 2) the plaintiff's performance or excuse for nonperformance; 3) the defendant's breach, and 4) damages to the plaintiff as a result of the breach.  *CDF Firefighters v. Maldonado*, 158 Cal.App. 4th 1226, 1289 (2008). A cause of action for breach of the implied covenant of good faith and fair dealing flows from the contract's existence and prohibits either party to a contract from doing "anything which will injure the right of the other to receive the benefits of the agreement." *Tillbury Constr. v. State Comp. Ins. Fund*, 137 Cal.App. 4th 166, 474 (2006).

Plaintiff contends common issues of fact and law predominate because every element of the breach of contract cause of action can be analyzed based on facts that are common to each class member.  He argues his case is similar to *Menagerie Productions v. CitySearch*, 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009).  In *Menagerie*, plaintiffs alleged class members entered into a contract to place 'pay-per-click' advertisements on defendant's website, and defendant failed to detect and prevent 'click fraud' – clicks on internet advertisements made with no intention of doing business with the advertiser.  The putative class was defined as "[a]ll persons or entities in the United States who paid money for pay-per-click advertising through Citysearch.com."  *Id.* at *3. Plaintiffs asserted causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence and violations of California's UCL.

1   With respect to the contract-based claims, plaintiffs alleged the contract was breached

2   by defendant's failure to monitor for and filter out click fraud, and the implied covenant

3   of good faith and fair dealing was breached because defendant subjectively believed its

4   click fraud procedures were unreasonable.  In opposing the motion for class certification

5   with respect to these causes of action, defendant argued an individual analysis of each

6   class member's understanding of the contract was necessary to determine whether they

7   intended the contract to require payment for all clicks regardless of the source.  *Id.* at

8   *10.  The district court rejected the argument, finding the causes of action arose from a

9   standard form contract and the alleged breach of contract, if proven, was objectively

10  unreasonable conduct that could be established without resorting to individualized proof.

11  *Id.* at *11.  The court accordingly held common issues of law and fact predominated with

12  regard to the contract-based causes of action.  *Id.*

13          Plaintiff analogizes to *Menagerie,* arguing Defendant's contracts with every class

14  member are "nearly identical."  *Memorandum of Points & Authorities in Support of Class*

15  *Certification*, p. 22.  Although some variations exist from state to state, he claims the

16  gravamen of the home warranty plans is the same.  He alleges Defendant breached the

17  express terms and implied covenant of the warranty plans by creating a uniform system

18  that allows and incentivizes its contractors to deny legitimate claims; perform substan-

19  dard repairs; gouge customers for excessive "non-covered" costs, and refuse to work on

20  expensive claims.  *Id.*  As a result of this breach, Plaintiff claims he and the class

21  members suffered damages.  *Complaint*, ¶ 40.  In his motion, Plaintiff articulates that

22  class members' damages arise from the fact that "each class member who made a

23  claim during the class period faced the risk that [Defendant's] contractor would deny

24  legitimate claims, perform cheap repairs and punt on expensive jobs or upsell the

25  customer on 'non-covered charges.'"  *Memorandum of Points & Authorities in Support*

26  *of Class Certification,* p. 16.  Plaintiff claims "it is irrelevant to the claims asserted by

27  Plaintiff here whether any individual claim was approved or denied because in every

28  instance [Defendant] breached the implied covenant of good faith and had already

1   engaged in intentional conduct designed to deprive class members of the benefits of the

2   home warranty plans." *Id.* pp. 16-17.  Plaintiff seeks rescission of the home warranty

3   plans and restitution of premiums and service call fees.  *Complaint*, ¶¶ IV-V.

4          The conduct described by Plaintiff in his motion is neither analogous to *Menag-*

5   *erie* nor does it alone constitute a breach of contact.  A breach is the "wrongful, i.e.

6   unjustified or unexcused, failure to perform a contract.  *See Witkin, Summary of*

7   *California Law*, Contracts, § 847 (10th. Ed. 2005); Cal. BAJI No. 10.83.  In *Menagerie,*

8   the contracts were alleged to have been breached by the defendant's failure to monitor

9   for and filter out click fraud.  Here, however, Plaintiff argues "(Defendant) breaches the

10  contract at the time it interferes with class members' ability to receive benefits of the

11  home warranty plans – which occurs before a claim is even filed."  *Reply in Support of*

12  *Class Certification*, p. 10.  The nature of some contracts is such that a demand for

13  performance by one party is a necessary condition precedent to the obligation of the

14  other to perform.  In these circumstances, non-performance is not a breach unless

15  performance is due.  *Restatement (Second) of Contracts* § 235.  Such is the case here.

16  Defendant's duty to perform under the terms of the home warranty plans does not arise

17  until a homeowner makes a claim.  If a claim is never made, Defendant does not have

18  an obligation to perform.   If a claim is made, Defendant's obligation to perform under

19  the home warranty plan is triggered and any failure to fulfill its duties under the plan at

20  this point would constitute a breach.  Thus, the creation of the system alleged by

21  Plaintiff is not, in and of itself, a breach or a "failure to perform" contractual obligations.

22         Moreover, when Plaintiff's contract-based causes of action are examined from

23  the point at which a claim for benefits was made and Defendant's duty to perform arose,

24  it is evident an individual inquiry into the handling of each class member's claim would

25  be necessary to determine whether a breach occurred.  *See, e.g., Babineau v. Federal*

26  *Express Corp.*, 576 F.3d 1183, 1193-94 (11th Cir. 2009).  In *Babineau*, the Eleventh

27  Circuit found common issues did not predominate in a breach of contract cause of

28  action where FedEx was alleged to have breached employment contracts by failing to

1   pay for three categories of time worked: (1) the interval between an employee's manual

2   punch in time and the scheduled start time; (2) the interval between an employee's

3   scheduled end time and his manual punch out time; and (3) the time worked during

4   unpaid breaks.  *Id.* at 1186.  The court found even if FedEx had a uniform policy

5   pressuring some employees to arrive early or stay late, it was clear from the record that

6   other employees did so voluntarily and for purely personal reasons and, thus, the policy

7   would not prove on a class-wide basis that FedEx required any individual class mem-

8   bers to work without pay."  *See also Newell v. State Farm Gen. Ins. Co.*, 118 Cal. App.

9   4th 1094, 1103 (2004) (finding that despite alleged scheme by insurer to limit liability on

10  earthquake claims and use of improper claims practices, "each putative class member

11  could still recover for breach of contract... only by proving his or her claim was wrong-

12  fully denied, in whole or in part, and the insurer's action in doing so was unreasonable");

13  *Barusco v. 21st Century Ins. Co.*, 108 Cal. App. 4th 110, 119 (2003) (class certification

14  properly denied, in light of individual assessment required of property, damages

15  sustained, and actual claims practices employed).

16      Likewise, here, even if Defendant has a uniform policy that encourages the

17  wrongful denial of claims, the mere existence of this policy would not prove on a class-

18  wide basis that claims were wrongfully denied or inappropriately handled.  In fact,

19  Plaintiff and his expert concede Defendant legitimately denies certain claims.  *See*

20  *Boggs Dec.,* Ex. B (Campion Depo., pp. 49-50, ln. 23-12) and Ex. C (Transcript of

21  Deposition of Arnie Rodio ("Rodio Depo."), pp. 109-110, ln. 7-6).  Thus, an inquiry would

22  have to be conducted on an individualized basis to determine whether claims that were

23  denied were wrongfully denied in order to determine whether Defendant breached the

24  terms of the home warranty plans at issue.

25      Plaintiff attempts to distinguish *Newell* and *Barusco*, arguing these cases sought

26  monetary damages for the wrongful claims-handling practices and the courts, therefore,

27  found common issues of fact and law would not predominate with respect to defen-

28  dants' liability for damages since the only alleged breach of contract by defendants was

the alleged wrongful denial of claims.  *Reply in Support of Class Certification*, p. 9.

Here, Plaintiff seeks to rescind the contracts and seeks restitution as a remedy instead

of damages.  *Complaint*, ¶ 41; *Reply in Support of Class Certification*, p. 10.

Even if Plaintiff could establish a class-wide basis to rescind the class members'

home warranty plans, the claim for restitution would require individualized examination.

Cal. Civ. Code §1691(b) requires a party seeking to rescind a contract to "[r]estore to

the other party *everything of value* which he has received from him under the contract or

*offer to restore* the same *upon condition* that the other party do likewise, unless the

latter is *unable or positively refuses to do so*."  *Id.* (emphasis added)*; See also Myerchin

v. Family Benefits*, 162 Cal.App. 4th 1526, 1535 (2008) (plaintiff who accepted settle-

ment money from defendant could not effectuate rescission of settlement agreement

without returning consideration received).

Here, a claim for rescission and restitution would require class members to

disgorge "everything of value" they received under their plans, necessitating an individu-

alized inquiry into the claims handling process to determine whether benefits were

received by class members and, if so, what the value of those benefits was.  The record

demonstrates that a very high percentage of the class members received benefits under

their plans.  Defendant provides data regarding service requests made from 2005 to

2009, a significant portion of the class period.  *Opposition to Motion for Class Certifica-

tion*, pp. 5-6.  The percentage of service requests denied was 14.2%, whereas the

number of service requests covered was 85.8%.  *Id.*[1]  Given that an individualized

examination would need to be made into the claims of such a large portion of the class

to determine the value of the benefit they received under their plans, the contract-based

causes of action are not suitable for class treatment even if Plaintiff seeks restitution, as

opposed to damages.  Furthermore, an individualized examination would be necessary

to determine which class members would be entitled to restitution of home warranty

---

[1]  Defendant explains the way it tracks data skews the number of denials high, such that there are actually fewer denials for coverage of claims than there are denials of service requests.  *Opposition to Motion for Class Certification*, p. 5, fn 24.

1   plan premiums because, as discussed below in section III.C.1.c.iii., many of the home

2   warranty plans were not purchased by class members, but instead were purchased on

3   their behalf by third parties.

4         Because an individualized inquiry would be necessary (i) to determine whether

5   class members whose claims were denied were wrongfully denied; (ii) to ascertain the

6   benefit received by the class members whose claims were covered  to determine to

7   what extent, if at all, they are entitled to restitution; and (iii) to determine which class

8   members would be entitled to restitution of premiums, it is evident individual issues

9   would overwhelm the issues common to the class.  As a result, the contract-based

10   claims cannot be certified.

11            **c.**    **The UCL Claim**

12         California's UCL prohibits any "unlawful, unfair or fraudulent business act or

13   practice."  Cal. Bus. & Prof. Code § 17200.  The UCL is a broad remedial statute that

14   permits individuals to challenge "unfair competition" practices, which are broadly defined

15   as including "any unlawful, unfair, or fraudulent business act or practice and unfair,

16   deceptive, untrue or misleading advertising...."  *Lozano v. AT&T Wireless Services, Inc.*,

17   504 F.3d 718, 731 (9th Cir. 2007); Cal. Bus. & Prof. Code 17200.  It is violated where a

18   defendant's act or practice is (1) unlawful; (2) unfair; (3) fraudulent; or (4) false advertis-

19   ing.  *Id.*  Each prong of the UCL is a separate and distinct theory of liability.  *Id.*

20   "Although the scope of the UCL is sweeping, it is not unlimited."  *In re Firearm Cases*,

21   126 Cal.App.4th 959, 979 (2005).  "[A] UCL claim must establish a causal link between

22   a defendant's business practice and the alleged harm."  *Id.* at 981.  A UCL claim is

23   equitable in nature and damages cannot be recovered.  *Durell v. Sharp Healthcare*, 183

24   Cal. App.4th 1350, 1359 (2010).  "Prevailing plaintiffs are generally limited to injunctive

25   relief and restitution."  *Id.* (citation omitted).  Plaintiff alleges Defendant violated each

26   prong and that common issues of law and fact predominate as to each prong.

27   / /

28

### i.     The Unlawful Prong

The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state, or local law may serve as the basis for a UCL claim.  *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838-839 (1994).

In his Complaint, the only statute Plaintiff alleges Defendant violated is Cal. Insurance Code § 790.03; however, in his motion, Plaintiff also argues Defendant violated Insurance Code § 332.  Defendant counters Plaintiff can not maintain a private cause of action under Insurance Code § 790.03, but even if he could, neither that claim nor the one predicated under Insurance Code § 332 can be certified because individual issues predominate.[2]  *Opposition to Motion for Class Certification*, p. 24, fn 76.

Plaintiff contends Insurance Code § 790.03 requires Defendant to "conduct and diligently pursue a thorough, fair and objective investigation" in response to each warranty claim.  *Memorandum of Points & Authorities in Support of Motion for Class Certification*, p. 23.  Plaintiff states Defendant violates this statute by delegating its investigation of warranty claims to third party contractors who "have a skin in the game." *Id.*  In every instance, coverage decisions are based on the diagnosis of third party contractors who have a financial incentive for claims to be denied and, therefore, Plaintiff argues, common issues of fact and law predominate.  *Id.*

Assuming a private cause of action exists under § 790.03 and assuming further Defendant's relationship with the contractors violates the statute, Plaintiff's efforts to certify the class break down under a causation analysis, as it is apparent that the causal link between Defendant's alleged unlawful business practices and any harm suffered by

---

[2]   Defendant contends Plaintiff's UCL claim based on an alleged violation of Insurance Code § 790.03 is barred because the California Unfair Insurance Practices Act does not provide for a private cause of action, citing *R&R Sails, Inc. v. Ins. Co. of Penn.*, 610 F.Supp.2d 1222, 1232 (S.D. Cal. 2009).  *Opposition to Motion for Class Certification*, p. 24.  This contention exceeds the scope of an inquiry under Fed. R. Civ. P. 23 and is better suited for a pleading motion or a motion for summary judgment.  The Court, therefore, has not examined this argument.

class members can not be established on a class-wide basis.  First, as discussed above

in section III.C.1.b., most class members' claims were covered, notwithstanding the

alleged unlawful delegation of coverage decisions to contractors and the alleged

financial incentives for them to deny claims.  Second, there is no dispute that Defen-

dant's denial of some claims was appropriate.  A determination as to whether class

members were harmed due to improper claim handling thus requires review of the

particular circumstances pertaining to the handling of each class member's claim to

assess whether the claim was approved or denied and, if it was denied, whether the

denial was legitimate.

In addition, as explained above in section III.C.1.b., an individualized analysis

would be necessary to determine whether restitution is appropriate and, if so, the

amount of any restitution.  *See Pineda v. Bank of America*, 50 Cal. 4th 1389, 1401

(2010) (finding the object of restitution under the UCL is to restore plaintiff to "the status

quo ante").[3]

### ii.    The Unfair Prong

Plaintiff contends "an 'unfair' business practice occurs 'when it offends an

established public policy or when the practice is immoral, unethical, oppressive,

unscrupulous or substantially injurious to consumers,'" citing *DCI Solutions, Inc. v.

Urban Outfitters, Inc.*, 2010 U.S. Dist. LEXIS 44438 *21-22 (S.D. Cal., May 6, 2010).

He alleges Defendant intentionally or recklessly created a system that deprives its

customers of the benefits of their warranty plans.  Proof of Defendant's unfair conduct

---

[3]  Insurance Code § 332 requires each party to an insurance contract communicate all material facts within its knowledge that the other side has no independent means of ascertaining.  Plaintiff alleges Defendant violated Insurance Code § 332 by failing to disclose its improper business practices.  *Memorandum of Points & Authorities in Support of Motion for Class Certification,* p. 24.  Defendant's customers, he claims, have no way of ascertaining facts that would have been material in deciding whether to purchase a home warranty plan.  Thus, Plaintiff contends, because Defendant failed to disclose these facts to any of its customers, common issues of fact and law predominate.  *Id.*  Even if this cause of action, which does not appear in the Complaint, were properly before the Court on this motion, it faces the same impediments to class certification as the UCL fraud claim (section III.C.1.c.iii.) and the CLRA claim (section III.C.1.d.) addressed below, including the need for an individualized inquiry to determine appropriate restitution.

1   can be established on a class-wide basis, he claims, because each class member was

2   subject to the conduct and everyone who made a claim "faced the risk that Old Repub-

3   lic's contractor would deny legitimate claims, perform cheap repairs, punt on expensive

4   jobs or upsell the customer on "non-covered charges." *Memorandum of Points &*

5   *Authorities in Support of Motion for Class Certification,* pp. 24-25.

6          Plaintiff's argument that he and the putative class members are entitled to

7   restitution of money acquired by Defendant in connection with the home warranty plans

8   because they "faced the risk" their claims would be denied is untenable.  In *Impress*

9   *Comm. v. Unumprovident Corp.*, 335 F.Supp.2d 1053 (C.D. Cal. 2003), plaintiffs alleged

10  defendant defrauded them into buying disability insurance policies and that it did not

11  intend to provide the coverage promised in the policies.  Plaintiffs' claimed injury was

12  based on their contention that the value of their insurance was diminished by defen-

13  dant's improper claims procedures.  The court rejected plaintiffs' "diminished value

14  theory," concluding that "[a]n allegation that Defendant's administration of the plan might

15  result in denial of future benefits is purely speculative...."  *Id.* at 1059.  Likewise, here,

16  Plaintiff's theory that he and the class members "faced a risk" of not receiving benefits

17  under the home warranty plans is too speculative to entitle them to restitution.  Further-

18  more, as Defendant points out, the evidence indicates a homeowner who made a claim

19  had a far greater chance of the claim being covered than denied, and at least certain

20  claims that were denied were legitimately denied.  Individual inquiries and proof would,

21  therefore, be required to determine whether the alleged "unfair" conduct actually caused

22  injury to each class member and to determine appropriate restitution.[4]

23  ─────────────────

24          [4]  In his Reply, Plaintiff argues relief is available under the UCL "without individualized proof of deception, reliance, and injury," citing *In re Tobacco II Cases (Tobacco II )*, 46 Cal.4th 298, 326 (2009).  *Reply in Support of Class Certification*, p. 14.  As explained in section

25  III.C.1.c.iii, below, Plaintiff overstates the holding of *Tobacco II*, which essentially held that, *for purposes of standing*, as long as the representative plaintiff(s) is/are able to establish

26  causation and injury under the UCL, the class members will also have *standing*, regardless of whether they relied upon defendant's allegedly improper conduct.  *Tobacco II* does not

27  eliminate the need to satisfy the requirements for class certification, including the predominance requirement, and does not stand for the proposition that causation and injury

28  should be inferred on a class-wide basis where, as here, the majority of the class members were not harmed by the alleged wrongful conduct, and where individualized inquiries would be

09cv748-JMA(NLS)

### iii.     The Fraudulent/False Advertising Prongs

Conduct violates the fraudulent and false advertising prongs of the UCL if "members of the public are likely to be deceived." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008).  The "focus is on the defendant's conduct, rather than plaintiff's damages." *Menagerie*, 2009 WL 3770668.  However, a causal link must exist between the alleged conduct and the alleged injury.  "[O]ne who was not exposed to the alleged misrepresentation and therefore could not possibly have lost money or property as a result of the unfair competition is not entitled to restitution." *Pfizer, Inc. v. Sup. Ct.*, 182 Cal. App.4th 622, 631 (2010).

Plaintiff contends Defendant made misrepresentations and omissions with regard to its claim handling practices to every person who purchased a home warranty plan. *Memorandum of Points & Authorities in Support of Motion for Class Certification,* p. 26. Specifically, Plaintiff alleges Defendant's website and written advertisements make misrepresentations such as the following:

–     Old Republic Home protection customers enjoy peace of mind, convenience, budget protection, and easy dependable service.  No more "searching the Yellow Pages" for a reputable repairman, no more "hassles" over the cost of repairs, no more "budget busting" repair bills.

–     As a Home Seller Our Home Warranty Helps You:

-     Sell Faster – by providing a competitive edge over other homes in the market.
-     Sell for a Higher Price – because when a buyer feels protected from unknown after-sale problems, it can discourage downward price negotiations.
-     Sell With Peace of Mind – knowing that after you have moved out, covered service problems will be taken care of – offering you additional after-sale liability protections.

–     As a Home Buyer Our Home Warranty Offers You:

---

necessary as to the handling of each class member's claim to determine whether the "unfair" conduct caused harm and to determine appropriate restitution.

1         -     Peace of Mind – knowing you're protected against unexpected
            repair or replacement costs.

2         -     Budget Protection – from the high cost of home repair.

3 *Id.* pp. 3-4; *Notice of Lodgment*, Ex. 14.  Plaintiff also alleges the standard home

4 warranty plan represents Defendant "will provide service on covered systems or

5 appliances that were properly installed and in good safe working order on the effective

6 date of this Plan." *Complaint*, ¶¶ 68-69.  He further alleges Defendant failed to disclose

7 its ranking system and the low rates it pays contractors to the putative class members.

8 *Memorandum of Points & Authorities in Support of Motion for Class Certification,* p. 26.

9 Plaintiff contends these omissions and misrepresentations raise questions of law and

10 fact that can be proven on a class-wide basis.  *Id.*

11      Plaintiff relies on *Keilholtz*, in which plaintiffs brought a class action against

12 manufacturers of gas fireplaces under the CLRA and the UCL for failing to warn

13 consumers the exterior of its fireplaces could reach temperatures of 475 degrees while

14 in use and cause third degree burns on contact.  *Keilholtz*, 268 F.R.D. at 335.  Because

15 of the omission, members of the putative class (owners of homes in which the fireplaces

16 were installed) came to own homes in which the fireplaces were installed.  *Id.*  In

17 certifying the claim under the UCL, the court rejected defendants' argument that proving

18 plaintiffs' claim required an inquiry into specific warnings each putative class member

19 received and an assessment of whether the warnings would have misled reasonable

20 members of the public.  *Id.* at 342 (*quoting Tobacco II,* 46 Cal.4th at 320 (for the

21 proposition "relief under the UCL is available without individualized proof of deception,

22 reliance, and injury")).  The court analogized to and also quoted from *Mass. Mut. Life*

23 *Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292-93 (2002), remarking

24      (t)he fact that a defendant may be able to defeat the showing of causation
     as to a few individual class members does not transform the common

25      question into a multitude of individual ones; plaintiffs satisfy their burden of
     showing causation as to each by showing materiality as to all.  Thus, it is

26      sufficient for our present purposes to hold that if the trial court finds
     material misrepresentations were made to the class members, at least an

27      inference or reliance would arise as to the entire class.

28 *Id.*  The court held plaintiffs could prove with generalized evidence defendants' conduct

1   was "likely to deceive" purchasers, but reserved discretion to decertify the class or order

2   the creation of subclasses "should it later develop that class members were provided

3   such a variety of information that a single determination as to materiality is not possi-

4   ble." *Id.*

5       Plaintiff argues the class here is entitled to an inference of common reliance on

6   the alleged omissions and misrepresentations because "relief under the UCL is avail-

7   able without individualized proof of deception, reliance, and injury," citing *Menagerie*,

8   2009 WL 3770668, which quoted from *Tobacco II,* 46 Cal.4th at 320.  As observed

9   above, this language from *Tobacco II* was also relied upon by the *Keilholtz* court in

10  certifying the class in that case.

11      The quotation, as it is used by Plaintiff and the courts in *Menagerie* and *Keilholtz*,

12  overstates the holding of *Tobacco II.*   As more fully discussed in *Cohen v. DirectTV*,

13  178 Cal. App.4th 966 (2009), *Tobacco II* held "*for purposes of standing* in context of the

14  class certification issue in a 'false advertising' case involving the UCL, the class

15  members need not be assessed for the element of reliance.  In short, *Tobacco II*

16  essentially ruled that, *for purposes of standing*, as long as a single plaintiff is able to

17  establish that he or she relied on a defendant's false advertising, a multitude of class

18  members will also have standing, regardless of whether any of those class members

19  have in any way relied upon the defendant's allegedly improper conduct."  *Id.* at 981

20  (emphasis in original).

21      In *Cohen*, the plaintiff brought a class action under the UCL and CLRA, alleging

22  he and other class members "subscribed to DirectTV's HD Package based on

23  DirectTV's national advertising and marketing of the HD package" and that DirectTV

24  had represented its HD Package was broadcast in a certain standard when it actually

25  was not.  *Id.* at 970.  Acknowledging the California Supreme Court's decision in

26  *Tobacco II*, the Court of Appeal stated, "we do not understand the UCL to authorize an

27  award for injunctive relief and/or restitution on behalf of a consumer who was never

28  exposed in any way to an allegedly wrongful business practice."  *Id.* at 980.  In the

context of the issues raised in *Cohen*, the court found *Tobacco II* to be irrelevant

because the issue of standing simply is not the same thing as the issue of predomi-

nance.  *Id.* at 981.  It explained, "[s]tanding, generally speaking, is a matter addressed

to the trial court's jurisdiction because a plaintiff who lacks standing cannot state a valid

cause of action."  *Id.* (citations omitted).  The issue as to whether questions of law or

fact common to class members predominate over any questions affecting only individual

members, on the other hand, goes to the practicalities and utilities of litigating an action

on a class-wide basis.  *Id.*[5]

      The proposed class in *Cohen* was defined as "[r]esidents of the United States

who subscribed to DirectTV's High Definition Programming Package."  *Id.* at 968. The

proposed class members included "subscribers who never saw DirectTV advertise-

ments or representations of any kind before deciding to purchase the company's HD

services, and subscribers who only saw and/or relied upon advertisements that con-

tained no mention of technical terms regarding bandwidth or pixels, and subscribers

who purchased DirectTV HD primarily based on word of mouth or because they saw

DirectTV's HD in a store or at a friend's or family member's home."  *Id.* at 979.  The

court held, therefore, common issues of fact did not predominate because "the mem-

bers of the class stand in a myriad of different positions insofar as the essential

allegation in the complaint is concerned, namely, that DIRECTV violated the CLRA and

the UCL by inducing subscribers to purchase HD services with false advertising."  *Id.*

      When considering class certification, an inference of common reliance is

---

      [5]  *See also Tobacco II*, 46 Cal. 4th at 324 ("We therefore conclude that Proposition 64 was not intended to, and does not, impose [the UCL's] standing requirements on absent class members in a UCL class action *where class requirements have otherwise been found to exist*." (emphasis added).  Federal case law supports the distinction articulated in *Cohen*.  A court's threshold inquiry into standing "in no way depends on the merits of the [plaintiff's claim.]" *Warth*, 422 U.S. at 500.  The Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Id.* at 501.  In contrast, review under Rule 23(b) requires a "rigorous analysis" to ensure the prerequisites of Rule 23(b) are actually satisfied, not just presumed from the pleadings.  *Dukes*, 603 F.3d at 581.  The court must probe behind the pleadings if doing so is necessary to make findings on the certification decision.  *Id.* at 589.

permitted in claims arising under the UCL when a specific material misrepresentation of a particular fact was made to each class member and the claims of all the class members stem from this source. *Gonzales v. Proctor & Gamble Co.*, 247 F.R.D. 616, 626 (S.D. Cal. 2007) (citations omitted). Where a class of consumers may have seen all, some, or none of the advertisements that form the basis of a plaintiff's suit, an inference of common reliance or liability is not permitted. *Id.* Furthermore, courts are reticent to extend an inference of reliance to "mixed" cases, i.e. those involving allegations of material omissions and misrepresentations. *See Gartin v. S & M NuTec, LLC,* 245 F.R.D. 429, 440 (C.D. Cal. 2007).

In fact, *Keilholtz* involved a uniform material omission to the proposed class. The manufacturers were alleged to have failed to disclose the fireplaces could reach temperatures of 475 degrees and cause third-degree burns on contact. In comparison, Plaintiff's case is predicated on both misrepresentations and omissions. He claims Defendant induced consumers to purchase warranty plans by misrepresenting that it would pay the cost of covered items under the home warranty plans and by failing to disclose it maintained policies, procedures and economic incentives to deny legitimate claims or to shift the majority of the costs for repair or replacement work to the policyholder. *Complaint*, ¶¶ 51 and 71.

The basis for this case is far more similar to the fraud in the inducement claims in *Cohen* than the failure to inform claims in *Keilholtz*. The fact the alleged misrepresentations were made in the home warranty plans and a copy of the plan was received by every class member does not, as Plaintiff posits, end the inquiry as to whether common reliance should be inferred. As in *Cohen*, misrepresentations are also alleged to have been made by a variety of other means, including advertisements, marketing materials and Defendant's website. While Plaintiff argues these constitute "uniform written materials," the fact remains the proposed class members may have seen some, all or none of these statements prior to the purchase of their home warranty plans due to the varying ways in which they acquired their plans. The home warranty plans are primarily

obtained through a real estate transaction.  Many of the home warranty plans were not purchased by a class member.  A home buyer's agent might negotiate for the seller to purchase a plan, a plan may be offered by the seller's broker as an enticement, or the plan may be requested by the home buyer.  *Gallagher Dec.* ¶ 5; *Boggs Dec.*, ¶ 5, Ex. D., *Deposition of Gary Vistalli ("Vistalli Depo.")*, August 12, 2009 at 162:5-17.  Customers can also purchase plans directly from Defendant via its website.  *Gallagher Dec.,* ¶ 5; *Boggs Dec.*, ¶ 5, Ex. L.  A class member whose plan was purchased for him or her may not have seen Defendant's website, marketing materials or even the home warranty plan before it was purchased.

Thus, unlike *Keilholtz*, where there was a single uniform material omission and the defendants might only be able to "defeat the showing of causation as to a few individual class members," here reliance can not be inferred or established on a class-wide basis.  Instead, an individualized inquiry is necessary due to the varying means by which misrepresentations are alleged to have been made and the varying ways in which the putative class members acquired their plans.  *See also Pfizer,* 182 Cal. App.4th 622, 632-633 (class is overbroad where members were not exposed to alleged misrepresentations and, therefore, were not entitled to restitution).

Reliance is not the only aspect of Plaintiff's UCL false advertising claim that requires an examination into the specific circumstances of each class member's claim.  It is apparent an individualized inquiry would be needed to determine whether the statements Defendant is claimed to have made were actually misrepresentations.  Defendant is alleged to have misrepresented it would cover the cost of covered items under the home warranty plans (*Complaint,* ¶¶ 51 and 53), and that it would "provide service on covered systems or appliances that were properly installed and in good and safe working order working order on the effective date" of the plans (*Complaint,* ¶¶ 68-69).  If Defendant covered the cost of a class member's claim for benefits under the policy, it can not be said a misrepresentation occurred.  As discussed earlier, the vast majority of claims made by class members were covered by Defendant.  Moreover,

1  Defendant's denial of a claim does not, in and of itself, establish a misrepresentation

2  occurred, because, as even Plaintiff has acknowledged, the denial may have been

3  legitimate.  Thus, an individualized inquiry would need to be undertaken to determine

4  which claims were wrongfully denied in order to establish in which instances a misrepre-

5  sentation occurred.  Finally, as discussed in sections III.C.1.b. and III.C.1.c.i., individual

6  issues predominate with regard to Plaintiff's claims for restitution.

7              **d.    The CLRA Claim**

8        The CLRA proscribes "unfair methods of competition or deceptive acts or

9  practices" in the sale of goods or services to a consumer.  Cal. Civ. Code § 1770(a).

10  Conduct that is unlawful under the CLRA includes "representing that goods or services

11  have... characteristics... uses, benefits, or qualities which they do not have and repre-

12  senting that goods or services are of a particular standard, quality, or grade... if they are

13  of another." Cal. Civ. Code §§ 1170(a)(5) and (7).  Claims under the CLRA require

14  proof of causation, reliance and damages.  *Faigman v. AT&T Mobility LLC*, 2007 U.S.

15  Dist. LEXIS 52192, 821 (N.D. Cal. 2007).

16        Plaintiff claims Defendant violated the CLRA when it misrepresented that it

17  "would cover the cost of covered items under the home warranty plan, when in fact [it]

18  created economic incentives for third-party contractors to deny claims completely or to

19  shift the majority of the costs for repair or replacement work to the consumer." *Com-*

20  *plaint*, ¶ 51.  Defendant is also alleged to have misrepresented that it would conduct a

21  thorough and objective investigation of every submitted claim, when it actually improp-

22  erly delegated investigation of claims to the third-party contractors.  *Id.* ¶ 53.  As a

23  result of these misrepresentations, the class is alleged to have sustained damages.  *Id.*

24  ¶ 56.

25  / /

26  / /

27

28

Defendant correctly argues actual reliance must be established under the CLRA.[6]

*Cohen*, 178, Cal. App. 4th at 981; *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 809-810 (2007).  Plaintiff and the members of the putative class must, therefore, "show not only that a defendant's conduct was deceptive but that the deception caused them harm."  *Mass. Mut. Life*, 97 Cal. App. 4th at 1292.  Because actual reliance on the alleged misrepresentation would have to be established for each class member, the predominance requirement could not be satisfied.  An individual assessment would also need to be made as to whether Defendant's representations were actually false as to specific class members and to determine whether the putative class members suffered any injury.

Plaintiff contends reliance can be inferred with regard to the CLRA claim, again relying on *Keilholtz*.  Plaintiff further argues that *Tobacco II* requires only that the class representative establish reliance and that he does not have to show reliance on advertisements or marketing materials with unrealistic specificity.  *Reply in Support of Motion for Class Certification*, p. 16.  As discussed above, *Tobacco II* discusses the reliance requirement of the UCL, post-Proposition 64, in relation to standing.  It does not discuss the reliance requirement under the CLRA.  Even if the analysis in *Tobacco II* were applicable to a CLRA claim, Plaintiff's argument in support of inferred reliance is no more compelling here than it is with regard to his UCL false advertising claim discussed in section III.C.1.c.iii. above.

Even if it were permissible to infer common reliance in a CLRA claim, as in a UCL false advertising claim, an inference of reliance would only be permitted when a specific material misrepresentation of a particular fact was made to each class member and the claims of all the class members stem from this source.  *Gonzales*, 247 F.R.D. at 624.  In *Keilholtz*, this requirement was satisfied because the claim involved a single

---

[6]  In a footnote, Defendant also argues a home warranty plan is not a "good" or "service" under the CLRA, citing *Diaz v. First American Home Buyers Corp.* 09CV0775-H(WMC). *Opposition to Motion for Class Certification*, p. 21, fn. 73.  This substantive issue of law is not a proper subject for a footnote in briefing on a motion for class certification.  It has not been properly raised and is not appropriate for consideration at this time.

09cv748-JMA(NLS)

uniform material omission to the proposed class.  As discussed in section III.C.1.c.iii.

above, in this case, Plaintiff alleges Defendant engaged in both misrepresentations and

omissions.  Moreover, as with the UCL false advertising claim, the misrepresentations

are alleged to have been made through various means, and not just in the home

warranty plans, and the putative class members may have seen some, all or none of the

alleged mispresentations prior to acquiring their plan.  Many putative class members, in

fact, may not have even seen the home warranty plans before acquiring them.  Thus, an

inference of reliance on behalf of the proposed class is not permissible, and individual

issues would once again overwhelm any common issues.

> **e.    Misrepresentation/False Promise Causes of Action**

Plaintiff again argues he is entitled to a presumption of reliance as to these

claims.  *Memorandum of Points & Authorities in Support of Class Certification*, p. 27.

Individual issues predominate with regard to these causes of action for the same

reasons discussed with respect to the UCL false advertising claim (section III.C.1.c.iii.)

and the CLRA claim (section III.C.1.d.).

> **2.    Superiority**

Rule 23(b)(3) requires the Court to find "a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."  Considerations

pertinent to this finding include:

> (A)    the class members' interests in individually controlling the prosecu-
> tion or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy
> already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; and
>
> (D)    the likely difficulties in managing a class action.

The superiority requirement tests whether "class litigation of common issues will reduce

litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97

F.3d 1227, 1234 (9th Cir. 1996).  "If each class member has to litigate numerous and

1   substantial separate issues to establish his or her right to recover individually a class

2   action is not superior." *Zinser*, 253 F.3d at 1192.

3         Here, it is apparent that numerous difficulties would be encountered in the

4   management of this case as a class action in view of the pervasive individual issues

5   discussed in section III.C.1.  As discussed above, the proposed class members stand in

6   a variety of different positions with regard to all of the asserted causes of action.

7   Individualized examination of the class members' claims would be necessary respecting

8   breach, misrepresentation, causation, reliance and restitution, effectively requiring

9   discrete hearings on these issues as to each of the class members.  Thus, it can not be

10  said the proposed class action is superior to other available methods for adjudicating

11  the controversy.

12      **D.**    **Rule 23(b)(2) Requirements**

13        Plaintiff alternatively seeks certification under Fed. R. Civ. P. 23(b)(2), which

14  allows for certification when "the party opposing the class has acted or refused to act on

15  grounds that apply generally to the class, so that final injunctive relief or corresponding

16  declaratory relief is appropriate respecting the class as the whole."  Fed. R. Civ. P.

17  23(b)(2).   Plaintiff contends that because Defendant has adopted a policy that is the

18  same for all class members, certification under Fed. R. Civ. P. 23(b)(2) is appropriate,

19  citing *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 U.S. Dist. LEXIS

20  95083 *10 (C.D. Cal. Nov. 13 2008).  *Memorandum of Points & Authorities in Support of*

21  *Class Certification*, p. 30.  Plaintiff also claims Defendant's fraudulent and wrongful

22  business practices are ongoing and will not cease absent an injunction, as authorized

23  under the UCL and CLRA.  *Id.*

24        Defendant contends the test for determining whether certification under Rule

25  23(b)(2) is appropriate requires the Court to focus predominately on the Plaintiff's intent

26  in bringing the suit, citing *Goldberg v. Winston & Maroone*, 1997 WL 139526, *3-4

27  (S.D.N.Y. Mar. 26, 1997).  *Opposition to Motion for Class Certification*, p. 27.  Defen-

28  dant argues Plaintiff's claims are focused on obtaining monetary restitution for the

putative class members, and that Plaintiff specifically seeks a return of paid premiums and trade call fees.  Furthermore, Defendant argues, Plaintiff lacks standing to assert claims for declaratory and injunctive relief because he no longer has a home warranty plan and has testified he has no intention of purchasing a plan from Defendant again, citing *Cattie v. Wal-Mart Stores*, Inc., 504 F.Supp.2d 939, 951-52 (S.D. Cal. 2007).  According to Defendant, Plaintiff's claims for injunctive relief are equivalent to a declaration of liability, calling for monetary restitution.  *Opposition to Motion for Class Certification*, p. 27.

The Ninth Circuit recently rejected the test advocated by Defendant, finding the so-called *Molski* approach, which focuses on the named plaintiff's subjective intent, is unlikely to yield a precise answer.  *Dukes,* 603 F.3d at 616-17 (*citing Molski v. Gleich*, 318 F.3d 937, 950 (9th Cir. 2003)).[7]  The court clarified that claims for monetary relief may be certified as part of a Rule 23(b)(2) class, but to be certified under Rule 23(b)(2), a class must seek only monetary damages that are not "superior [in] strength, influence, or authority" to the injunctive and declaratory relief sought.  *Id.* at 616.  Certification is not appropriate where monetary relief is "predominate" over declaratory or injunctive relief.  *Id.* at 617.  "Factors such as whether the monetary relief sought determines the key procedures used, whether it introduces new and significant legal and factual issues, whether it requires individualized hearings, and whether its size and nature – as measured by recovery per class member – raise particular due process and manage-ability concerns would all be relevant, though no single factor would be determinative."  *Id.*

In this case, Plaintiff's claims are predicated on monetary restitution for the putative class members who made claims under their plans.  Plaintiff specifically seeks a return of paid premiums and trade call fees.  *Complaint*, Prayer for Relief, ¶ V.  In fact,

---

    [7]  The Ninth Circuit Court of Appeals also rejected the *Allison* "incidental damages standard" which permits certification of clams for monetary relief under Rule 23(b)(2) only when they are "incidental to requested injunctive or declaratory relief," because it is unduly restrictive.  *Id. citing Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415-16 (5th Cir. 1998).

1   in responding to Defendant's arguments against certification under Fed. R. Civ. P.

2   23(b)(2), Plaintiff concedes he "primarily seeks monetary restitution on behalf of the

3   class." *Reply in Support of Class Certification*, p. 18, ln. 18.  Although he also seeks

4   injunctive and declaratory relief, the nature of the relief sought is equivalent to a

5   declaration of liability.  The monetary relief sought would determine many of the key

6   procedures used in trying this case because, as discussed above (see sections

7   III.C.1.b. and III.C.1.c.i.), individualized procedures would be necessary to determine

8   any appropriate restitution.

9        Moreover, Plaintiff no longer has a home warranty plan and has no intention of

10  purchasing another one.  *See Boggs Dec.,* Ex. B (Campion Depo., p. 27, ln. 3-18; p. 65,

11  ln. 13-16).  If he were to prevail on his claims, therefore, the appropriate final relief

12  would be monetary restitution.  The same can be said for all other class members

13  whose home warranty plan has expired.  Thus, not only do monetary damages predomi-

14  nate for these class members, but individualized hearings would be necessary to

15  ascertain the appropriate remedy.  The case is, therefore, not appropriate for certifica-

16  tion under Rule 23(b)(2).

17       **E.    Defendant's Motion to Strike**

18       Defendant seeks to strike the expert report of Arnold Rodio.  (Doc. No. 48.)

19  Defendant takes exception with Rodio's conclusions that 1) "Old Republic jobs are

20  money losers for the contractors" and 2) "in order to make money, Old Republic

21  contractors had to engage in... unethical practices."  Defendant contends Rodio lacks

22  the necessary quailifications to render an expert opinion regarding Defendant's contrac-

23  tors' profitability or the effect that this profitability has on their behavior.  *Motion to

24  Strike*, pp. 5-7.  Defendant further argues the conclusions are unreliable and based on

25  false assumptions and unsupported speculation.  *Id.* pp. 7-16.

26       *Daubert v. Merrill Dow Pharmaceuticals, Inc. ("Daubert I")* requires courts ensure

27  that expert testimony presented at trial be both relevant and reliable.  509 U.S. 579, 597

28  (1993).  The Ninth Circuit has not yet determined whether a full *Daubert* analysis is

required at the class certification stage.  *Dukes*, 603 F.3d at 603 fn. 22 ("We are not

convinced by the dissent's argument that *Daubert* has exactly the same application at

the class certification stage as it does to expert testimony relevant at trial.").  Other

circuits are split as to whether a *Daubert* hearing is necessary prior to class certification.

*See e.g. In re: NetBench, Inc. Securities Lithog.*, 259 F.R.D. 656, 670, fn. 8 (N.D. Ga

2009) ("[P]erforming *Daubert* analyses at this stage of the litigation, in the context of

class certification, would be inappropriate."); *but see Am. Honda Motor Co., Inc. v.

Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010) ("[W]hen an expert's report or testimony is

critical to class certification... a district court must conclusively rule on any challenge to

the expert's qualifications or submissions prior to ruling on a class certification motion.")

(internal citation omitted).

    In this case, there is no purpose in undertaking a full *Daubert* analysis as the

opinions proffered in Rodio's report are not critical to the Court's determination of the

motion for class certification, as class certification would not be appropriate even if his

analysis were accepted as true.  The motion to strike, therefore, is denied without

prejudice to Defendant raising the issue again at or prior to trial, if appropriate.

### CONCLUSION

    Based on the foregoing, the Court finds that although Plaintiff has satisfied the

requirements of Fed. R. Civ. P. Rule 23(a), he has failed to demonstrate the require-

ments of Rule 23(b)(2) or (3) are met.  Under Rule 23(b)(3), questions of fact and law

common to the class members do not predominate over questions affecting only

individual members and a class action is not superior to other available methods for the

fair and efficient adjudication of the controversy.  Plaintiff has also failed to establish that

injunctive or declaratory relief is appropriate respecting the class as a whole, under

Rule 23(b)(2).  Plaintiff's motion for class certification is, therefore, denied.  Defendant's

motion to strike is also denied.

DATED:  January 6, 2011

Jan M. Adler
U.S. Magistrate Judge

33