CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP
   Edward D. Chapin, Esq. (SBN: 053287)
   Francis A. Bottini, Esq. (SBN: 175783)
   Douglas J. Brown, Esq. (SBN: 248673)
550 West "C" Street, Suite 2000
San Diego, California 92101
Tel: (619) 241-4810
Fax: (619) 955-5318

Attorneys for Plaintiff Douglas J. Campion

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS J. CAMPION, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>OLD REPUBLIC HOME PROTECTION COMPANY, INC., a California Corporation, and DOES 1-25, Inclusive,<br><br>    Defendants. | Case No.: 09cv0748 JMA (NLS)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: January 20, 2012<br>Time: 10:00 a.m.<br>Dept.: D<br>Judge: Honorable Jan M. Adler<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   RELEVANT FACTS .........................................................................................3

III.  SUMMARY ADJUDICATION STANDARD ..................................................3

IV.  ARGUMENT......................................................................................................4

       A.    Plaintiff's CLRA Claims Cannot Be Dismissed Because, As Old Republic Itself Has Repeatedly Argued, Its Home Warranty Plans Are Not Insurance ...............................................................................................4

       B.    Old Republic's Argument That The Court Can Grant Summary Judgment On Plaintiff's Request For Injunctive Relief Is Without Merit......................................................................................................................8

       C.    Plaintiff Is Entitled To Injunctive Relief On His UCL Claim Because Injunctive Relief Is Particularly Appropriate For This Case........................................................................................................................12

V.   CONCLUSION................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*Aguilar v. Atlantic Richfield Co.*,
    25 Cal. 4th 826 (2001) ..........................................................................................3

*Aron v. U-Haul Co. of California*,
    143 Cal. App. 4th 796 (2006) ...............................................................................11

*Cal. Physicians' Serv. v. Garrison*,
    28 Cal. 2d 790 (1946) ............................................................................................6

*Cattie v. Wal-Mart Stores, Inc.*,
    504 F.Supp. 2d 939 (S.D. Cal. 2007) ..................................................................11

*Century 21 Real Estate Corp. v. Sandlin*,
    846 F.2d 1175 (9th Cir. 1988) ..........................................................................2, 12

*Clayworth v. Pfizer, Inc.*,
    49 Cal. 4th 758 (2010) ................................................................................ *passim*

*Cortez v. Purolator Air Filtration Products Company*,
    23 Cal. 4th 163 (2000) ..........................................................................................13

*Fairbanks v. Superior Court*,
    46 Cal. 4th 56 (2009) .........................................................................................4, 5

*Finelite, Inc. v. Ledalite Architectural Products*,
    2010 U.S. Distr. LEXIS 88041 (N.D. Cal. Aug. 26, 2010) ............................12, 13

*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*,
    175 Cal. App. 4th 1306 (2009) ..............................................................................3

*Hall v. Time Inc.*,
    158 Cal. App. 4th 847 (2008) ...............................................................................11

*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*,
    175 Cal. App. 4th 1306 (2009) ..............................................................................3

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) .........................................................................................11

*Laster v. T-Mobile USA, Inc.*,
    2009 U.S. Dist. LEXIS 116228 (S.D. Cal. Dec. 14, 2009) ...................................12

*Law Offices of Dixon R. Howell v. Valley*,
    129 Cal. App. 4th 1076 (2005) ..............................................................................3

*Lee v. American Nat'l Ins. Co.*,
    260 F.3d 997 (9th Cir. 2001) ...............................................................................12

*Midpeninsula Citizens for Fair Housing v. Westwood Investors*,
    221 Cal. App. 3d 1377 (1990) ...............................................................................11

*Shersher v. Superior Court,*
 154 Cal. App. 4th 1491 (2007) .........................................................................................10

*Stearns v. Ticketmaster Corp.*,
 655 F.3d 1013 (9th Cir. 2011). ....................................................................................2, 8, 9

*Title Insurance Co. v. State Board of Equalization*
 4 Cal. 4th 715 (1992) ........................................................................................................5

*Truta v. Avis Rent A Car System, Inc.*,
 193 Cal. App. 3d 802 (1987) ..........................................................................................5, 6

**STATUTES AND RULES**

California Business & Professions Code Section 17200 ......................................................... *passim*

California Business & Professions Code Section 17203 ......................................................... *passim*

California Business & Professions Code Section 17204 ......................................................... *passim*

California Civil Code Section 1761(a). ...................................................................................4

California Civil Code Section 1761(b) ....................................................................................4

Calfornia Evidence Code Section 201 .....................................................................................6

Calfornia Insurance Code Section 12740 ................................................................................1

Federal Rule of Civil Procedure 56 .........................................................................................1

Federal Rule of Civil Procedure 23 ..................................................................................13, 14

## I. INTRODUCTION

Defendant's motion for summary judgment is without merit. Defendant Old Republic Home Protection Company, Inc.'s ("Defendant" or "Old Republic") argument that Plaintiff's Consumer Legal Remedies Act ("CLRA") claim should be dismissed since "home protection contracts" are allegedly "insurance" is unfounded. No California or federal appellate court has held that "home protection companies" are "insurance companies." Significantly, Old Republic does not have a license to sell insurance in California. While Old Republic is subject to several provisions of the California Insurance Code, it is not subject to most provisions of the Insurance Code, reflecting the fact that it is not a traditional insurance company. The Legislature specifically labeled Old Republic as a "home protection company" rather than an "insurance company." *See* Ins. Code §12740. As the Legislature found, a home protection company like Old Republic does not engage in the typical activities of a normal insurance company but instead "undertakes for a specified period of time, for a predetermined fee, to repair or replace all or any part of any component, system or appliance of a home necessitated by wear and tear, deterioration or inherent defect, arising during the effective period of the contract." Ins. Code § 12740(a).

Defendant's second argument – that Plaintiff does not have standing to seek injunctive relief under the Unfair Competition Law ("UCL") because he allegedly lacks Article III standing – is wrong, both substantively and procedurally. Procedurally, it is improper since Defendant has not moved to dismiss Plaintiff's entire UCL claim, and instead merely seeks a declaration on the alleged issue of whether Plaintiff is entitled to one of two remedies available under the UCL. Old Republic does not argue that Plaintiff does not have a valid UCL claim or that he is not entitled to restitution under his UCL claim, only that Plaintiff allegedly lacks standing to seek injunctive relief. As such, the Court cannot grant summary judgment as to Plaintiff's UCL claim. Moreover, Old Republic has not requested summary adjudication or partial summary judgment. Old Republic's notice of motion and motion do not state that Old Republic is moving for summary *adjudication*, only summary *judgment*.

Substantively, Old Republic is incorrect that Plaintiff lacks Article III standing to pursue injunctive relief under his UCL claim. In fact, this Court previously held that Plaintiff has Article III standing in its order denying class certification. Old Republic does not acknowledge, address, or refute

the Court's previous finding. The Ninth Circuit also recently affirmed that where, as here, a UCL plaintiff suffers injury, he has met Article III's standing requirement. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011). Instead, Old Republic argues that Plaintiff does not have standing to seek injunctive relief since he does not have a *current* contract with Old Republic. This argument is contrary to the clear statutory language of the UCL and California Supreme Court authority. As demonstrated herein, the UCL clearly allows a plaintiff to seek injunctive relief when he "***has suffered injury*** in fact and ***has lost money or property*** as a result of the unfair competition." Cal. Bus. & Prof. Code §17204 (emphasis added). Thus, the statute clearly does not require a *current* threat of injury or a threat of *future* irreparable injury, as Defendant wrongfully contends. As demonstrated by the California Supreme Court's decision in *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 790 (2010), a UCL plaintiff need only have suffered past injury in order to seek injunctive relief; a UCL plaintiff does not need to have *any* contractual relationship with the defendant. *See id.* at 790 (reversing the trial court's summary rejection of an injunctive relief claim because plaintiff had standing under § 17204 due to *past, indirect* business dealings with the defendant).

      Finally, Defendant argues that the Court should preclude Plaintiff from pursuing injunctive relief under the UCL since injunctive relief is allegedly not an appropriate remedy in this case. This is incorrect, since the Ninth Circuit has made clear that "[i]njunctive relief is the remedy of choice for trademark and **unfair competition cases**, since there is no adequate remedy at law . . . ." *Century 21 Real Estate Corporation v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988) (emphasis added) (citing Cal. Bus. & Prof. Code § 17200, *et seq.*). Thus, if Plaintiff proves his UCL claim at trial and establishes that Old Republic engaged in unfair competition, then Plaintiff is entitled to injunctive relief under the UCL. Thus, since Old Republic has not moved for summary judgment as to Plaintiff's entire UCL claim, the Court may grant summary judgment as to the UCL claim and must allow Plaintiff to proceed to trial on the UCL claim and seek all remedies afforded to him by the California Legislature.

      Plaintiff requests oral argument on this motion.

//

//

//

## II.     RELEVANT FACTS

As Defendant admits in its moving papers, it is undisputed that Plaintiff: (1) was an Old Republic plan holder during the Class Period; (2) made a claim under his Old Republic home protection contract; and (3) no longer has an Old Republic home protection contract. *See* Def's Mem. at 4. Further, as demonstrated by Plaintiff's deposition testimony, which Defendant does not dispute, Plaintiff Campion suffered injury and out-of-pocket damages. *See* Def's Mem. at 4. *See also* Declaration of Francis A. Bottini, Jr. In Support Of Plaintiff's Opposition to Defendant's Motion for Summary Judgment *(*"Bottini Decl.") Ex. A (pp. 35-38, 51-54 of deposition transcript from Plaintiff's deposition, stating that Plaintiff made a claim with Defendant on his garbage disposal, paid a $50 service call fee, and then had to pay $300-$400 more out of his pocket to buy a new garbage disposal and have it installed after Defendant improperly rejected his claim).

Old Republic does not have a license in the State of California to sell insurance. *See* Bottini Decl., Ex. B. Instead, it sells "home protection contracts," which the Legislature specifically differentiated from insurance contracts. Old Republic is not subject to most provisions of the Insurance Code, although it is indisputably subject to some provisions of the Code.

## III.    SUMMARY ADJUDICATION STANDARD

Federal Rule of Civil Procedure 56 requires that the Court shall not grant summary judgment unless the movant shows that there is no genuine dispute as to any material fact. F.R.C.P. 56(a). "[A] motion for summary judgment may only be granted when, considering all of the evidence set forth in the papers and all inferences reasonably deducible therefrom, it has been demonstrated that there is no triable issue as to any material fact and the cause of action has no merit." *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 1331 (2009); Code Civ. Proc., § 437c, subd (c). The party moving for summary judgment bears the burden of persuasion that there is no triable issues of material fact and that it is entitled to judgment as a matter of law. *Aguilar v. Atlantic Richfield Co.,* 25 Cal. 4th 826, 850 (2001). The party opposing the motion bears the burden of setting forth specific facts showing a triable issue of material fact as to plaintiff's claim. *Law Offices of Dixon R. Howell v. Valley*, 129 Cal. App. 4th 1076, 1091-1092 (2005).

## IV. ARGUMENT

### A. Plaintiff's CLRA Claim Cannot Be Dismissed Because, As Old Republic Itself Has Repeatedly Argued, Its Home Warranty Plans Are Not Insurance.

The "services" Old Republic provides with respect to consumer "goods" are clearly covered by the CLRA. Home warranty contracts are covered by the CLRA based on the unambiguous text of the statute. The home appliance repair and replacement work that Old Republic promises to undertake is vastly different than the "pure" insurance provided by, for example, life insurance companies.[1] Traditional insurance companies do not promise to fix appliances, pools or HVAC equipment. They simply promise to pay a sum of money if certain conditions occur. The garden-variety repair and replacement services Old Republic promises to undertake, on the other hand, fall squarely within the statutory coverage of the CLRA. The CLRA defines "services" as: "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civil Code §1761(b). The CLRA further defines "goods" as: "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property." Cal. Civil Code §1761(a). Old Republic's home warranty plans are unquestionably "services," since Old Republic promises to provide repair services to consumers. Those "services" apply to "goods" covered by the CLRA, since the dishwashers, ovens, refrigerators and other items covered by the home warranty plans are "tangible chattels bought or leased for use primarily for personal, family, or household purposes." Cal. Civil Code §1761(a). Dishwashers, ovens, pools,

---

[1] In *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61 (2009), the court held that life insurance was not subject to the CLRA because it does not involve a service related to consumer goods. ("Neither is life insurance a "service" under the act. An insurer's contractual obligation to pay money under a life insurance policy is not work or labor, nor is it related to the sale or repair of any tangible chattel. Accordingly, we agree with the Court of Appeal that the life insurance policies at issue here are not services as defined in the Consumers Legal Remedies Act."). Again, the services provided here by Old Republic are much different in nature, and do involve servicing of consumer goods such as appliances.

heaters and air conditioners are also "goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property." *Id*. Thus, the "services" provided by Old Republic unquestionably pertain to "goods" explicitly covered by the CLRA.

No California state or federal court of appeal has ever held that home protection contracts are contracts of insurance, or that claims under the CLRA against home protection companies are precluded. Many courts, including Judge Denton of the San Diego Superior Court in a factually similar class action lawsuit against another home warranty company, have refused to dismiss CLRA claims since home warranty plans are not pure insurance. *See* October 19, 2007 Order Overruling Demurrer, *Edleson v. American Home Shield*, Case No. 37-2007-00071725-CU-BT-CTL (San Diego Superior Court):

> Regarding the second cause of action, whether the Complaint uses the term "insurance" is immaterial. This is simply a legal conclusion without significance, not a factual allegation. Based on the facts alleged, the court finds that the contracts do not amount to insurance such that the CLRA does apply. See *Fairbanks v. Superior Court* (2007) 154 Cal. App. 4th 435. Insurance is essentially a financial transaction, completely unrelated to the sale or lease of any identifiable consumer good or service. *Id*. at 442. "An insurance contract is not something akin to a haircut, a plumbing repair, or a two-year warranty on a microwave oven— it is simply an agreement to pay if and when an identifiable event occurs." *Id*. Whether a contract can be defined as an insuring agreement depends on whether the assumption of risk (which normally defines an insuring agreement) is the principal object and purpose of the contract. *Title Insurance Co. v. State Board of Equalization* (1992) 4 Cal. 4th 715, 726-727 (indemnification provision secondary to main object and purpose of the underwriting agreements). As alleged in this action, the main object of the agreement is to provide quality repairs for appliances. This is the rendition of services, not a purely financial transaction.

*See* Bottini Decl., Ex. E.

"Insurance" is a "contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." Ins. Code §22. But not every contract involving risk assumption is an insurance contract. *See Truta v. Avis Rent A Car System, Inc*., 193 Cal.App.3d 802, 811 (1987). Indeed, the fact that a contract for services involves a risk transfer does not necessarily make it a contract for insurance. *Id*. at 811-12. "In short, the presence of a small element of

insurance, if one wishes to call it that, closely associated with the predominant element of the transaction – the element that gives the transaction is distinctive character – does not conclusively demonstrate that the transaction is within the reach of insurance regulatory laws." *Id*.

In *Truta*, for example, plaintiff rented a car from Avis and purchased a "collision damage waiver" whereby Avis agreed to assume all responsibility for damage to the vehicle. Claiming that Avis was not licensed to sell "insurance," Plaintiff brought a class action on behalf of all persons who purchased a similar waiver from Avis and other car-rental agencies. The trial court sustained defendants' demurrer and the Court of Appeal affirmed, explaining that:

> The principle object and purpose of the transaction before us, the element which gives the transaction is distinctive character, is the rental of an automobile. Peripheral to that primary object is an option . . . to reallocate the risk of loss . . . to the lessor in the event the vehicle sustains damage during the rental term. Thus . . . after reviewing the entire contract we are satisfied that this tangential risk allocation provision should not have the effect of converting the defendants as contracting lessors into insurers subject to statutory regulation.

*Id*. at 814.

The distinctive characteristic of the home warranty contracts in this case is the repair and replacement of home appliances and systems. *See Cal. Physicians' Serv. v. Garrison*, 28 Cal. 2d 790, 809-10 (1946) (holding that monthly membership dues in exchange for medical service is not insurance). Rather than insurance, the Contract is better described as a home warranty or service contract. Two judicially-noticeable facts support this conclusion.[2] First, Old Republic is not licensed to sell insurance in the State of California.[3] Second, the "FAQ" section on Old Republic's website explains:

//
//
//

---

[2] Plaintiff requests the Court take judicial notice of these facts under F.R.E. 201.

[3] *See* Bottini Decl., Ex. B.

> Q: What is a home warranty?
>
> A: The standard home warranty is a ***one-year service contract*** that protects a resale home buyer or current homeowner against the cost of unexpected repairs or replacement of major systems and appliances that break down due to normal usage. Coverage is also available to home sellers during the listing and escrow period to help them keep unforeseen breakdowns from potentially delaying the close of sale.[4]

*See* Bottini Decl., Ex. C. Old Republic itself doesn't think its home warranty contracts are "insurance." Old Republic has repeatedly told federal and state regulators in California and elsewhere that home warranty plans are <u>not</u> insurance. For example, Old Republic is a member of the California Home Service Contract Association (www.homeservicecontract.org), previously known as the Home Warranty Association of America ("HWA"). On August 31, 2004, the HWA sent a letter to the California Department of Insurance stating:

> We believe there are three fundamental differences between home protection contracts and insurance policies: 1) home protection contracts provide actual repair and replacement services to the contract holder; insurance policies provide monies, or other compensation to the insured; 2) home protection contracts cover the repair or replacement of residential systems and appliances that breakdown due to normal wear and tear, which will eventually happen to all systems and appliances after a fairly predictable period of time; insurance policies cover fire, theft, accidents, storms and other sudden and fortuitous events; 3) home protection contract holders' requests for service are handled via the telephone without the need for claims forms and claims adjusters; insurance policies require the filing of forms and completion of paperwork and normally a claims adjuster inspecting the actual sight of the claim. These three fundamental differences and the need for Fair Claims Regs for HP will become evident as we review the RH399 Replacement Regulations.

*See* Bottini Decl., Ex. F. Thus, Old Republic itself acknowledges that there are at least "three fundamental differences between home protection contracts and insurance policies." *Id.*

---

[4] A true and correct copy of this page from Old Republic's website is attached as Ex. C to the Bottini Decl.

**B. Old Republic's Argument That The Court Can Grant Summary Judgment On Plaintiff's Request For Injunctive Relief Is Without Merit**

**1. Plaintiff Clearly Has Article III Standing**

First, Defendant has not moved for summary judgment on Plaintiff's UCL claim, and instead merely seeks summary judgment on the alleged issue of whether Plaintiff is entitled to one of two remedies available under the UCL. Thus, Old Republic does not argue that Plaintiff does not have a valid UCL claim or that he is not entitled to restitution under his UCL claim. As such, Old Republic does not seek – and the Court cannot grant – summary judgment as to Plaintiff's UCL claim. Summary judgment is not proper as to a request for relief, as opposed to a claim itself. As such, Defendant's motion must be denied as it pertains to Plaintiff's UCL claim. Moreover, Old Republic has not moved for partial summary judgment.

Even if Defendant's motion was procedurally proper, it is substantively without merit. While Defendant challenges whether Plaintiff Campion has Article III standing, this Court has previously held that Plaintiff meets Article III's standing requirement. *See* Order Denying Plaintiff's Motion for Class Certification at p. 6 (Dkt. No. 56, Jan. 06, 2011). Defendant just ignores the Court's prior holding on this issue, and Defendant has never moved for reconsideration of the Court's holding. The Ninth Circuit recently held that injury such as that suffered here by Mr. Campion satisfies Article III's standing requirement. *Ticketmaster,* 655 F.3d at 1021. Moreover, Judge Huff, under similar circumstances, found no trouble holding that the plaintiff had Article III standing to assert claims against another home warranty claim. *See* Bottini Decl., Ex. D (September 21, 2009 Order in *Diaz*, holding that Plaintiff Diaz had Article III standing because she owned a home warranty plan and made claims that were denied). Here, the evidence of Plaintiff's Article III standing is undisputed since Defendant concedes that Plaintiff purchased a home protection contract from Defendant, made a claim, and suffered injury and out-of-pocket damages. *See* Def's Mem. at 4. *See also* Bottini Decl., Ex. A (pp. 35-38, 51-54 of deposition transcript from Plaintiff's deposition, stating that Plaintiff made a claim with Defendant on his garbage disposal, paid a $50 service call fee, and then had to pay $300-$400 more out of his pocket to buy a new garbage disposal and have it installed after Defendant improperly rejected his claim). This undisputed evidence satisfies all the requirements for Article III standing

identified by this Court in its January 6, 2011 Order and by the Ninth Circuit in its recent *Ticketmaster* decision.

### 2. Plaintiff Does Not Need To Be In A Current Contractual Relationship With Defendant In Order To Have Standing To Seek And Obtain Injunctive Relief Under The UCL

Defendant argues that Plaintiff does not have standing to assert injunctive relief since he no longer owns an Old Republic home protection contract. Def's Mem. at 10-12. Defendant's argument is without merit since Plaintiff seeks injunctive relief under Bus. & Prof. Code §17204, which does not require a plaintiff to have a current contractual relationship with a defendant in order to obtain injunctive relief. Defendant conveniently ignores the binding case law applicable to the UCL's unique statutory framework and relaxed standards of pleading and proof and instead cites cases that involved no UCL claim. *See* Def's Mem. at 10 (citing Supreme Court case involving a chokehold and a Ninth Circuit case involving standing under Oregon's constitution; neither case involved claim under California's UCL). Bus. & Prof. Code § 17204 specifically grants individuals the right to bring injunctive relief so long as they "have suffered" injury – it does not require that they be currently threatened with injury. The statute permits actions for injunctive relief to be brought:

> by a person who ***has suffered injury*** in fact and ***has lost money or property*** as a result of the unfair competition.

Cal. Bus. & Prof. Code §17204 (emphasis added). Thus, the statute clearly does not require a current threat of injury or a threat of future irreparable injury, as Defendant wrongfully contends. It is enough that Plaintiff Campion "has suffered injury." Here, Plaintiff has testified that he was injured and lost money as a result of Defendant's unfair business practices. Bottini Decl., Ex. A. Defendant's motion does not deny that Plaintiff has lost money or property as a result of Defendant's conduct. Thus, Plaintiff has established all he needs to in support of his claim for injunctive relief and therefore has standing to seek such relief.

In addition to the unambiguous text of Bus. & Prof. Code §17204, case law is also clear that a plaintiff seeking injunctive relief under Bus. & Prof. Code Section 17204 need not have a current contractual relationship with the defendant. Once the standing requirement is met, Plaintiff is entitled

to seek an injunction preventing Defendants from continuing to engage in unfair practices that violate the UCL.

The California Supreme Court made the issue very clear in *Clayworth*, 49 Cal. 4th at 790 (reversing the trial court's summary rejection of an injunctive relief claim because plaintiff had standing under § 17204 due to *past, indirect* business dealings with the defendant). In *Clayworth*, the plaintiff was a business which had never had a direct contractual relationship with the defendant. Instead, the plaintiff simply re-sold the defendant's products which the plaintiff had bought from *another* company. The plaintiff desired to assert an antitrust claim against the defendant when it learned that the defendant had allegedly fixed prices for the relevant product (pharmaceutical drugs). The plaintiff could not assert a claim under the Clayton Act, 15 U.S.C. §15, since the plaintiff did not purchase its pharmaceutical drugs directly from the defendant. Thus, the plaintiff asserted a claim under California's Cartwright Act, which provides a cause of action for indirect purchasers. Because the plaintiff had never engaged in any direct business dealings with the defendant, it obviously did not have a current contractual relationship with the defendant. Nonetheless, the Supreme Court held that plaintiff had standing to pursue injunctive relief under Bus. & Prof. Code § 17204 based on its *past injury* of being damaged when it indirectly bought a pharmaceutical drug from a middle-man at an allegedly inflated price. The Court stated:

> While the voters clearly intended to restrict UCL standing, they just as plainly preserved standing for those who *had* had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices. (Prop. 64, § 1, subds. (b), (d); *see* § 17204.) Under that standard, Pharmacies have established standing. To distribute their pharmaceuticals, Manufacturers depend on a network of wholesalers and retailers. Pharmacies acted as retailers for Manufacturers' drugs and thus had indirect business dealings with Manufacturers. (*See Shersher v. Superior Court* (2007) 154 Cal.App.4th 1491, 1499–1500 [65 Cal. Rptr. 3d 634] [indirect purchases may support UCL standing].) They lost money: the overcharges they paid. (*See Hall v. Time Inc*. (2008) 158 Cal.App.4th 847, 854 [70 Cal. Rptr. 3d 466] [§ 17204 standard is satisfied when the plaintiff has "expended money due to the defendant's acts of unfair competition"].) Finally, that loss was the result of an unfair business practice: Pharmacies paid more than they otherwise would have because of a price-fixing conspiracy in violation of state law. The voters' intent that under Proposition 64 suits be limited to those who suffer injury in fact is satisfied here.

*Clayworth*, 49 Cal. 4th at 788. (emphasis in original). *See Hall v. Time Inc.*, 158 Cal. App. 4th 847, 854 (2008) (§ 17204 requires only that plaintiff has "expended money due to the defendant's acts of unfair competition"); *Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 802-03 (2006) (plaintiff had standing to pursue UCL action because he suffered economic loss be being required to purchase excess fuel).

Indeed, injunctive relief is "the *primary* form of relief available under the UCL." *Id.* (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 319 (2009)) (emphasis supplied). In *Clayworth*, the California Supreme Court held that, so long as UCL claimants have standing, they may seek injunctive relief regardless of whether they could prove damages – and thus obtain restitution – resulting from defendants' unfair practices. *Id.* In so holding, the Supreme Court reasoned that "[n]othing in the [UCL's] language conditions a court's authority to order injunctive relief . . . to also order restitution" and that "the right to seek injunctive relief under [§] 17203 is not dependent on the right to seek restitution." *Id.*

The same reasoning applies here. The mere absence of a current contract between Plaintiff and Defendant cannot serve as a basis to bar Plaintiff – who has standing under § 17204 – from seeking injunctive relief. *See id.*; *see also Midpeninsula Citizens for Fair Housing v. Westwood Investors*, 221 Cal. App. 3d 1377, 1393 (1990) (holding that a "representative organization which does not have . . . standing under the Unruh Act is nonetheless entitled, pursuant to [§ 17204], to seek injunctive relief from alleged violations of the act"). Accordingly, Defendant's argument is meritless.

Defendant's cited cases are not to the contrary. In *Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp. 2d 939 (S.D. Cal. 2007) (Def's Mem. at 10-11), Judge Burns stated in *dicta*, with respect to an issue that "was not raised or briefed by any party," that he "is concerned that Plaintiff may lack standing to assert declaratory or injunctive relief." *Cattie*, 504 F.Supp.2d at 951. Judge Burns' comments were pure *dicta* and do not constitute a holding as to any issue. They certainly cannot contradict binding

//

//

//

authority from California's highest court.[5]  Judge Chesney made this point in rejecting similar federal district court opinions which pre-date *Clayworth*.  *See Finelite, Inc. v. Ledalite Architectural Products*, 2010 U.S. Distr. LEXIS 88041 (N.D. Cal. Aug. 26, 2010).  Defendant's cited cases here, in addition to being *dicta*, also pre-date *Clayworth* and are not persuasive in light of the California Supreme Court's subsequent *Clayworth* decision.

Moreover, even if the Court were to find that the standing requirements for seeking injunctive relief under the UCL are completely different in federal court than in state court, then the remedy should be a remand of this case (or, at a minimum, the UCL claim) to state court, not entry of summary judgment in defendant's favor.  Now that the Court has denied class certification, there is no CAFA jurisdiction over this case.  Thus, the Court could remand the case to state court.  *See Lee v. American Nat'l Ins. Co.,* 260 F.3d 997, 1005-07 (9th Cir. 2001) (noting that, even if a federal court lacks authority to remand an entire case, it retains discretion to remand claims over which it lacks subject matter jurisdiction).

### C.  Plaintiff Is Entitled To Injunctive Relief On His UCL Claim Because Injunctive Relief Is Particularly Appropriate For This Case

The Ninth Circuit has made clear that "[i]njunctive relief is the remedy of choice for trademark and **unfair competition cases**, since there is no adequate remedy at law . . . ." *Century 21 Real Estate Corp.*, 846 F.2d at 1180 (emphasis added) (citing Cal. Bus. & Prof. Code § 17200, *et seq.*).  Thus, the legislature made findings, recognized and acknowledged by the Ninth Circuit, that if Plaintiff is able to prove his unfair competition claims, he is entitled to injunctive relief under the UCL.  Old Republic completely ignores this binding Ninth Circuit precedent and instead cites to Supreme Court cases from 1919 which have nothing to do with California's UCL statute.  The legislature has made specific

---

[5] Defendant's reliance on *Laster v. T-Mobile USA, Inc.*, 2009 WL 4842801, 2009 U.S. Dist. LEXIS 116228 (S.D. Cal. Dec. 14, 2009) (Def's Mem. at 11) fares no better.  The court there, while stating that the plaintiff should be required to face a "repetition of the violation" in order to sue for injunctive relief, relied entirely on inapposite cases which did not involve a UCL claim.  *See Laster*, 2009 U.S. Dist. LEXIS 116228, at *9.  Again, an unreported district court case does not trump a California Supreme Court decision (*Clayworth*) that is directly on point and which specifically holds that injunctive relief is available under the specific provisions of the UCL without proof of a current business relationship or the threat of future injury.

findings of the existence of irreparable harm and the need for injunctive relief in cases asserting UCL claims. Neither Old Republic nor the Court is free to ignore the Legislature and the Ninth Circuit.

Moreover, Old Republic is simply wrong that Plaintiff has an adequate legal remedy for damages. In fact, Plaintiff is specifically precluded from recovering damages on his UCL claim. *Cortez v. Purolator Air Filtration Products Company*, 23 Cal.4th 163, 173 (2000) ("Damages are not available" in a UCL action.). And the fact that Plaintiff may have another cause of action which provides him the right to obtain damages certainly does not constitute a basis to deny Plaintiff injunctive relief under the UCL. If that were the case, most claims for injunctive relief under the UCL would be precluded. This is certainly not the law, and Old Republic cites no case for this preposterous argument.

The only other argument advanced by Old Republic in support of its vague assertion that injunctive relief is an "inappropriate remedy" in this case is the contention, with no citation to a single case, that injunctive relief would only be appropriate here if the Court had certified a F.R.C.P. 23(b)(2) injunctive class. Old Republic says that this Court supposedly decided that injunctive relief was inappropriate when it denied class certification. This is incorrect. The Court, of course, denied class certification as to Plaintiff's request to certify a class under F.R.C.P. 23(b)(2). But class certification is not necessary to obtain injunctive relief under the UCL, and the Court has made no findings that Plaintiff would be entitled to injunctive relief under an individual, non-class UCL claim if he proves his unfair competition allegations at trial. Judge Chesney recently explained the fallacy of Old Republic's reasoning when she rejected a defendant's baseless assertion that a plaintiff lacks standing to seek injunctive relief under the UCL unless the plaintiff has standing to seek restitution. *Finelite,* at 2010 U.S. Distr. LEXIS 88041. Judge Chesney, citing *Clayworth,* held that a plaintiff can seek injunctive relief under the UCL even if he or she does not have standing to seek restitution. If a plaintiff lacked standing to seek restitution, he or she would not be able to certify a class. Defendant's argument would also mean that no business could file an individual UCL claim and seek restitution against one of its competitors without certifying a class. A certified class is obviously not necessary for the Court to issue an injunction requiring a defendant to stop engaging in a business practice found to be unfair under the UCL. Indeed, to accept Old Republic's argument would require a complete re-writing of the UCL

statute to state that "injunctive relief is only available when a plaintiff certifies a F.R.C.P. 23(b)(2) class." That, of course, is a petition Old Republic is free to address to the Legislature.

## V. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety.

Dated: January 6, 2012

CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP
Edward D. Chapin (SBN 53287)
Francis A. Bottini, Jr. (SBN 175783)
Douglas J. Brown (SBN 248673)

s/ Francis A. Bottini, Jr.
Francis A. Bottini, Jr.

550 West C Street, Suite 2000
San Diego, California 92101
Telephone:  (619) 241-4810
Facsimile:  (619) 955-5318

Attorneys for Plaintiff