1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  DOUGLAS J. CAMPION,                )      Case No. 09-CV-748-JMA(NLS)
                                        )
12                  Plaintiff,          )      **ORDER GRANTING DEFENDANT'S**
                                        )      **MOTION FOR SUMMARY JUDGMENT**
13  v.                                  )      **[DOC. NO. 79] AND DENYING**
                                        )      **PLAINTIFF'S MOTION FOR LEAVE TO**
14  OLD REPUBLIC HOME PROTECTION        )      **FILE THE FIRST AMENDED CLASS**
    COMPANY, INC.,                      )      **ACTION COMPLAINT [DOC. NO. 89]**
15                                      )
                    Defendant.          )
16                                      )
                                        )
17  ─────────────────────────────────

18          Two motions are currently pending before the Court.  The first to be filed was

19  Defendant Old Republic Home Protection Company, Inc.'s Motion for Summary

20  Judgment on Claim for Violation of Consumer Legal Remedies Act ("CLRA") and on all

21  Claims as to Injunctive Relief, which was filed on October 28, 2011.  [Doc. No. 79.]

22  Plaintiff Douglas J. Campion filed an opposition brief on January 6, 2012, and

23  Defendant's reply was filed on January 13, 2012.  [Doc. No. 85 & 86.]

24          Thereafter, on January 27, 2012, Plaintiff filed a Motion for Leave to File the First

25  Amended Class Action Complaint.  [Doc. No. 89.]  Defendant opposed Plaintiff's motion

26  on February 15, 2012, and Plaintiff's reply brief was filed on February 22, 2012.  [Doc.

27  No. 90 & 91.]  A hearing was held on both motions on February 29, 2012.  Francis A.

28  Bottini, Esq. appeared on behalf of Plaintiff and Jay N. Varon, Esq. and Andrew B.

1   Serwin, Esq. appeared on behalf of Defendant.  After due consideration of the parties'

2   briefs and oral arguments, and as set forth below, the Court GRANTS Defendant's

3   motion for summary judgment and DENIES Plaintiff's motion for leave to file an

4   amended complaint.

5                       *I.  FACTUAL BACKGROUND*

6          Defendant sells home warranty plans to homeowners.  *Complaint,* ¶ 25.

7   Plaintiff's Complaint alleges how Defendant's home warranty plans work and the plan

8   Plaintiff purchased from Defendant (the "Plan") is incorporated by reference.  *Id.* at ¶ 9,

9   Ex. B.  Based on the Complaint and the Plan, the following facts are undisputed.  In

10  essence, Defendant's home warranty plans provide that covered systems and

11  appliances that become inoperable during the contract term due to normal wear and

12  tear will be repaired or replaced at Defendant's expense, or the plan holder will be

13  provided with payment in lieu of repair or replacement.  *Id.* at ¶ 25, Ex. B.  Defendant

14  does not repair or replace covered systems itself, but rather maintains a network of

15  independent contractors that it can dispatch to a plan holder's home to perform the

16  service.  *Id.* at ¶¶ 27-28, Ex. B.  The decision to repair or replace the covered systems,

17  as opposed to providing the plan holder with payment, rests solely with Defendant.  *Id.*,

18  Ex. B.

19         Plaintiff purchased a plan from Defendant that was effective from April 26, 2007

20  to April 26, 2008.  *Id.* at ¶ 9, Ex. B.  In February 2008, he made a warranty claim

21  regarding his garbage disposal.  *Id.* at ¶ 34.  After dispatching a contractor to Plaintiff's

22  home to inspect the unit, Defendant informed Plaintiff it was denying his claim on the

23  basis the garbage disposal was improperly installed.  *Decl. of Tammy H. Boggs in Supp.*

24  *of Def. Old Republic Company, Inc.'s Mot. for Summ. J. on Claim for Violation of CLRA*

25  *and on all Claims for Injunctive Relief ("Boggs Decl."),* Ex. B (Transcript of Deposition of

26  Douglas J. Campion ("Campion Depo.") pp. 30-36, ln. 11-12).[1]  Plaintiff did not renew

27  _____

28          [1]  Plaintiff made a second claim under the Plan for problems he was experiencing with
    his electric range/oven.  *Boggs Decl.,*, Ex. B, Campion Depo. pp. 28-30; ln. 7-7.  Another
    contractor responded to the claim, Plaintiff paid the $50 service fee, and the appliance was

1    his home warranty plan when it expired.  *Id.* at p. 27, ln. 3-15.  He does not currently

2    have a home warranty plan with Defendant and does not intend to purchase another

3    one.  *Id.* at p. 27, ln. 8-15; p. 65, ln. 12-19.

4                        ***II.  PROCEDURAL HISTORY***

5         Plaintiff filed his Complaint on March 6, 2009.  In it, he alleges on behalf of

6    himself and the putative class members, Defendant fraudulently induced them to

7    purchase warranty plans by misrepresenting that it would pay the cost of covered items

8    under the home warranty plans when, in fact, it maintained policies, procedures and

9    economic incentives to deny legitimate claims or to shift the majority of the costs for

10   repair or replacement work to the policyholder.  *Complaint*, ¶ 51 and 71.  He sought to

11   represent a class defined as:

12           All persons and entities in the United States who, during the period from
             approximately March 6, 2003, through the present (the "Class Period"),
13           made a claim under a home-warranty plan obtained from Defendant Old
             Republic Home Protection Company, Inc.  Excluded from the class are
14           defendants and their parents, subsidiaries, affiliates, all governmental
             entities, and co-conspirators.
15

16   *Id.* at  ¶ 15.  The causes of action asserted include Breach of Contract, Breach of

17   Implied Covenant of Good Faith and Fair Dealing, Violation of Cal. Civ. Code § 1790

18   (CLRA), Violation of Cal. Bus. & Prof. Code § 17200 (Unfair Competition Law ("UCL")),

19   Violation of Cal. Civ. Code § 1710(1) (Intentional Misrepresentation & Concealment),

20   and Violation of Cal. Civ. Code § 1710(4) (False Promise).

21        On September 19, 2010, following a Case Management Conference, the Court

22   entered a scheduling order, setting a deadline for any motions to amend the pleadings

23   or add parties of November 9, 2009, and a deadline for the filing of Plaintiff's class

24   certification motion of April 16, 2010.  [Doc. No. 17.]  The deadline for the filing of the

25   class certification motion was later continued to May 28, 2010, per the parties'

26   agreement.  [Doc. No. 26.]  On May 28, 2010, Plaintiff moved for leave to amend his

27   complaint [Doc. No. 36] and also to certify a class under Fed. R. Civ. P. 23(b)(2) and

28   _____

     repaired to Plaintiff's satisfaction.  *Id.*

(b)(3) [Doc. No. 30].  On July 17, 2010, the Court denied the motion for leave to amend, finding that even if Plaintiff had established good cause to afford him leave from the scheduling order deadline, as required by Fed. R. Civ. P. 16(b), the proposed amendment would be futile under Fed. R. Civ. P. 15(a).  [Doc. No. 42.]  After the conclusion of briefing on the motion for class certification, on January 6, 2011, the Court also denied that motion, finding certification was not appropriate under either Rule 23(b)(2) or (b)(3).  [Doc. No. 56.]  Plaintiff then filed a Motion for Reconsideration, or in the Alternative, Request for Clarification, of the Court's denial of class certification, which was denied on May 20, 2012.  [Doc. No. 58 & 64.]

### III.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A.    Legal Standard

Fed. R. Civ. P. 56(a) permits a party to seek summary judgment on all or part of a claim or defense.  Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material issue of fact is a question that a trier of fact must answer to determine the rights of the parties under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The moving party bears "the initial responsibility of informing the district court of the basis for its motion."  *Celotex*, 477 U.S. at 323.  To satisfy this burden, the movant must demonstrate that no genuine issue of material fact exists for trial.  *Id.* at 322.  Where the moving party does not have the ultimate burden of persuasion at trial, it may carry its initial burden of production in one of two ways.  "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz*

1   *Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  To withstand a motion for summary

2   judgment, the non-movant must then show that there are genuine factual issues which

3   can only be resolved by the trier of fact.  *Reese v. Jefferson Sch. Dist. No. 14J*, 208

4   F.3d 736, 738 (9th Cir. 2000).  A party asserting that a fact is genuinely disputed cannot

5   rely solely on its pleadings, but must support that assertion with affidavits, depositions,

6   or answers to interrogatories.  Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at

7   324.  The court must review the record as a whole and draw all reasonable inferences

8   in favor of the non-moving party.  *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107,

9   1112 (9th Cir. 2003).  To avoid summary judgment, the non-moving party need not

10  produce evidence in a form that would necessarily be admissible at trial.  *Celotex*, 477

11  U.S. at 324.  Unsupported conjecture or conclusory statements, however, are insuffi-

12  cient to defeat summary judgment. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097,

13  1103 (9th Cir. 2008); *Hernandez*, 343 F.3d at 1112.  The standard applied to a motion

14  seeking partial summary judgment is identical to the standard applied to a motion

15  seeking summary judgment with respect to the entire case.  *Freescale Semiconductor,*

16  *Inc. v. ChipMOS Tech., Inc.*, 2011 U.S. Dist. LEXIS 100978 *4 (N.D. Cal. Sept. 8, 2011)

17      **B.**    **The CLRA Does Not Cover Defendant's Home Warranty Plans.**

18          Plaintiff's third cause of action alleges Defendant's conduct violates the CLRA,

19  which prohibits specific unfair and deceptive acts and practices in a "transaction

20  intended to result or which results in the sale or lease of goods or services to any

21  consumer." *Complaint*, ¶¶ 48-56; Cal. Civ. Code § 1770.  Defendant moves for

22  summary judgment as to this claim, contending its home warranty plans are analogous

23  to insurance, relying on *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61-62 (2009), in

24  which the California Supreme Court determined life insurance is neither a good nor a

25  service and, therefore, not covered by the CLRA.  *Mem. of P.&A. in Supp. of Mot. for*

26  *Summ. J. ("Mot. for Summ. J."),* pp. 6–9.  Plaintiff counters that Defendant's home

27  warranty contracts fall under the CLRA because they are service contracts, not insur-

28  ance.  *Opp'n to Def.'s Mot. for Summ. J. ("Opp'n to MSJ."),* p. 5.

1   Goods are defined under the CLRA as "tangible chattels," which the home

2   warranty plans clearly are not.  Cal. Civ. Code § 1761(a).  Defendant's home warranty

3   plans must qualify as services, therefore, in order for the CLRA to apply.  Services are

4   defined by the CLRA as "work, labor, and services for other than a commercial or

5   business use, including services furnished in connection with the sale or repair of

6   goods."  Cal. Civ. Code § 1761(b).

7   The California Supreme Court held in *Fairbanks* that life insurance is not a

8   "service" under the CLRA because "[a]n insurer's contractual obligation to pay money

9   under a life insurance policy is not work or labor, nor is it related to the sale or repair of

10  any tangible chattel."  *Fairbanks*, 46 Cal. 4th at 61.  In a case involving similar allega-

11  tions against another home warranty plan company, the Hon. Marilyn L. Huff recently

12  considered the application of *Fairbanks* to home warranty plans similar to those offered

13  by Defendant.  *Diaz v. First American Home Buyers Protection Corp.*, 09CV775-

14  H(WMC), Doc. 15 (S.D. Cal. July 22, 2009.)  Observing that the *Fairbanks* holding is

15  limited to life insurance, Judge Huff found the reasoning behind the California Supreme

16  Court's decision similarly applies to home warranty plans.  *Id.*, p. 5–6.  In doing so, she

17  examined *Truta v. Avis Rent A Car Sys., Inc.*, 238 Cal. Rptr. 806 (Cal. Ct. App. 1987),

18  which is cited by Plaintiff in support of his argument that Defendant's warranty plans are

19  "service contracts" that are covered by the CLRA.  *Opp'n to MSJ*, pp. 5-6.

20      Holding that car rental companies did not engage in the unauthorized
        practice of insurance by providing collision damage waivers to customers,
21      the *Truta* court provided the following guidance: "In analyzing whether a
        contract constitutes insurance" courts should consider whether "the
22      elements of risk transference and risk distribution" were "a central and
        relatively important element of the transactions or instead merely inciden-
23      tal to other elements that gave the transactions their distinctive character."
         at 812 (quotation omitted); *see also Title Ins. Co. v. State Bd. of Equaliza-*
24      *tion*, 4 Cal. 4th 715, 726 (1992) (same). In *Truta*, the court concluded that
        the car rental companies were not issuing insurance under the insurance
25      code because the "principal object and purpose of the transaction" before
        them, "the element which gives the transaction its distinctive character,"
26      was the rental of an automobile.  at 813.

27      In contrast, the transfer of risk involved in First American's home protec-
        tion warranties is not merely incidental to other more distinctive elements
28      of the transactions. Instead, that risk transference is a central and rela-
        tively important element of the warranties. Accordingly, the Court is not

convinced that Defendant's warranty plans are not insurance.  Moreover, the California Insurance Code lists the home protection contract under "Classes of Insurance" and defines it as "a contract or agreement whereby a person, other than a builder, seller, or lessor of the home which is the subject of the contract, undertakes for a specified period of time, for a predetermined fee, to repair or replace all or any part of any component, system or appliance of a home necessitated by wear and tear, deterioration or inherent defect, arising during the effective period of the contract . . . ." Cal. Ins. Code § 12740(a).  Defendant's warranty plans fit squarely within this definition.

*Diaz*, pp. 6 - 7.

Plaintiff does not address *Diaz*, but instead directs the Court's attention to *Edelson*, a decision issued by the San Diego County Superior Court in what Plaintiff describes as a "factually similar class action lawsuit against another home warranty company."  *Opp'n to MSJ*, p. 5; *Decl. of Francis A. Bottini, Jr. in Supp. of Plaintiff's Opp'n to Def's Mot. for Summ. J. ("Bottini Opp'n to MSJ Decl.")*, Ex. E*, Edelson v. American Home Shield*, Case No. 37-2007-00071725-CU, BT-CTL [Super. Ct. S.D., October 19, 2007].  In *Edelson*, which predates the California Supreme Court's decision in *Fairbanks*, the court held that home warranty plans do not amount to insurance for purposes of the CLRA.  *Id.*

Plaintiff also requests judicial notice be taken that Defendant is not licensed to sell insurance in California and it describes the home warranty plan as a "one-year service contract" on its website.  *Opp'n to MSJ*, pp. 6-7; *Bottini Opp'n MSJ Decl.*, Ex. B & C.  Furthermore, Plaintiff contends, Defendant, as a member of the California Home Service Contract Association, has taken the position that home protection contraction contracts are fundamentally different from insurance policies because: 1) home warranty plans provide actual repair and replacement services, whereas insurance policies provide only money or other compensation to the insured; 2) home warranty plans cover the repair and replacement of household systems and appliances that can be expected to require these services within a fairly predictable period of time, whereas insurance policies cover fire, theft, accidents, storms and other sudden and fortuitous events; and 3) home warranty plan holders' requests for service are handled telephoni-

1  cally, without the need for claims forms and adjusters, whereas insurance policy claims

2  are not.  *Id.*, p. 7.  Plaintiff's arguments, however, miss the mark.  The salient issue is

3  not whether Defendant actually issues insurance policies, but rather whether the plans

4  issued by Defendant are sufficiently analogous to insurance such that they are neither a

5  "good" nor a "service," as defined by the CLRA.

6        The *Diaz* decision is well-reasoned, directly on point, and more compelling than

7  *Edelson* or Plaintiff's argument that the plans are actually "service contracts."  Defen-

8  dant's home warranty plans are not contracts for repair or replacement services and

9  Defendant does not itself provide these services.  Instead, the plans are designed to

10  offer protection to home owners from potential future losses.  The plans obligate

11  Defendant to pay for the cost of the repair or replacement of covered systems and

12  appliances that become inoperable due to normal wear and tear during the term of the

13  contract.  It is possible a claim may never be submitted and, thus, a homeowner may

14  not receive any "goods or services" under his or her plan.  The home warranty plans

15  provide for a transfer of risk that is not merely incidental, but rather is a central and

16  relatively important element of the plans, and the relationship between Defendant and

17  its plan holders and their respective obligations are consistent with the concept of

18  "insurance," as it is defined in the Insurance Code.[2]  Thus, as set forth in *Diaz* and

19  above, the Court concludes the reasoning of *Fairbanks* is applicable to Defendant's

20  home warranty plans, which are not "services" within the meaning of the CLRA.[3]  As a

21  result, Defendant is entitled to summary judgment as to Plaintiff's CLRA claim.

22      **C.    Plaintiff Does Not Have Article III Standing to Pursue Injunctive Relief**

23

24     [2] Cal. Ins. Code § 22 defines insurance as "a contract whereby one undertakes to
indemnify another against loss, damage, or liability arising from a contingent or unknown

25  event."

26     [3] Although not discussed by either party, after the California Supreme Court's decision
in *Fairbanks*, and the subsequent *Diaz* decision, the San Diego County Superior Court relied

27  on the reasoning of both cases in ruling the CLRA does not apply to home warranty plans.
*Decl. of Francis A. Bottini, Jr. in Supp. of Mot. for Leave to File the First Amended Complaint

28  ("Bottini Mot. for Leave to Amend Decl."),* Ex. B, *Kaplan v. Fidelity Nat'l Home Warranty Co.*,
Case No. 37-2008-00087962-CU-BT-CTL, filed November 1, 2011.

1   Plaintiff seeks injunctive relief under the CLRA and his fourth cause of action,
2 which arises under the UCL.  The UCL is a broad remedial statute that permits individu-
3 als to challenge "unfair competition" practices, which are broadly defined as including
4 "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue
5 or misleading advertising...."  *Complaint*, pp. 12–14; *Lozano v. AT&T Wireless Services,*
6 *Inc.*, 504 F.3d 718, 731 (9th Cir. 2007); Cal. Bus. & Prof. Code § 17200.   A UCL-based
7 claim is equitable in nature and damages cannot be recovered.  *Durell v.*
8 *Sharp Healthcare*, 183 Cal. App. 4th 1350, 1359 (2010).  "Prevailing plaintiffs are
9 generally limited to injunctive relief and restitution." *Id.*  (citation omitted).

10   Defendant's second argument in support of its motion for summary judgment is
11 that Plaintiff lacks Article III standing to obtain injunctive relief because he is not a
12 current plan holder, has no intention of purchasing another home warranty plan from
13 Defendant and, even if he were to buy another of Defendant's home warranty plans, he
14 is aware of Defendant's alleged business practices.  *Mot. for Summ. J.*, pp. 9–15.   All of
15 these factors, Defendant asserts, preclude Plaintiff from demonstrating that he faces a
16 realistic threat of repetition of harm.  *Id*.  The argument is directed only to Plaintiff's
17 ability to obtain injunctive relief.  Defendant does not contend Plaintiff lacks standing to
18 pursue restitution under the UCL or damages under his other causes of action.

19   Plaintiff raises a procedural objection to the motion, which the Court will address
20 before turning to the substantive arguments.  He argues, without citing any authority,
21 that Defendant's motion is procedurally improper because summary judgment is not
22 appropriate for a request for relief, as opposed to an entire claim, and Defendant has
23 not moved for partial summary judgment or summary adjudication.  *Opp'n to MSJ*, p. 8.
24 The objection is not supportable.  Rule 56(a) specifically provides that a motion may be
25 directed to part of a claim or defense and Defendant's moving papers clearly set forth
26 the standard for partial summary judgment.  *Mot. for Summ. J.*, p. 6.

27   Article III of the U.S. Constitution limits the jurisdiction of federal courts.  To meet
28 the Article III standing requirement "a plaintiff must show (1) it has suffered an 'injury in

1  fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

2  hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant;

3  and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by

4  a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC)*

5  *Inc.*, 528 U.S. 167, 180-181 (2000), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555,

6  560-561. (1992).  A plaintiff seeking to obtain declaratory or injunctive relief must

7  establish that he or she is "realistically threatened by a repetition of the violation" in

8  order to establish the relief sought would redress the alleged injuries.  *Gest v. Bradbury*,

9  443 F.3d 117, 1181 (9th Cir. 2006); *see also Summers v. Earth Island Institute*, 555 U.S.

10  488, 493 (2009); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (no standing

11  where the plaintiff was not realistically threatened by a repetition of a police officer's

12  chokehold because it was unlikely he would act illegally in the future.)  Furthermore, a

13  plaintiff must have standing for each type of relief sought.  *Summers*, 555 U.S. at 493,

14  *citing Lyons*, 461 U.S. at 109.

15        Plaintiff argues he "clearly has Article III standing," and that he need not be in a

16  current contractual relationship with Defendant in order to have standing to seek

17  injunctive relief under the UCL.  *Opp'n to MSJ*, pp. 8–9.  In making this argument, he

18  conflates the issue of whether he has Article III standing to assert a claim under the

19  UCL with the issue as to whether he has Article III standing to seek injunctive relief

20  under the UCL.  For example, he argues the issue of standing has already been

21  determined in connection with the class certification motion.  *Id.*, p. 8.  At that time,

22  however, the Court was only called upon to determine whether Plaintiff had Article III

23  standing to assert a claim under the UCL, not whether he had Article III standing to seek

24  injunctive relief under the UCL.  As mentioned earlier, and as the Court noted in its

25  order on the motion for class certification, there is no dispute as to whether Plaintiff has

26  Article III standing to seek restitution under the UCL.  [Doc. No. 56, p. 6.]

27        The two cases on which Plaintiff primarily relies are *Stearns v. Ticketmaster*

28  *Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2001) and *Clayworth v. Pzizer, Inc.*, 49 Cal. 4th 758

1   (2010).  In *Stearns*, the Ninth Circuit simply addressed whether Article III standing

2   existed at all, which is not at issue here.  *Id.* (holding that named class plaintiffs who

3   asserted they and putative class members were relieved of money during the allegedly

4   wrongful transactions had standing to prosecute class claims under the UCL.)

5          Plaintiff relies on *Clayworth* for the proposition that Cal. Bus. & Prof. Code §

6   17204 only requires a plaintiff to have "suffered injury" to establish standing to seek

7   injunctive relief under the UCL, and that a plaintiff need not be in a current contractual

8   relationship with the defendant to do so.  *Opp'n to MSJ*, pp. 9–10.  In *Clayworth*,

9   pharmacists filed claims under the Clayton Act and the UCL alleging manufacturers of

10  certain pharmaceutical drugs had engaged in price fixing, causing the plaintiffs to

11  purchase the drugs at inflated prices.  *Clayworth*, 49 Cal 4th at 764–765.  The pharma-

12  cists did not purchase the drugs directly from the defendant manufacturers, instead

13  acquiring them through wholesale distributers.  Defendants challenged Plaintiffs'

14  standing, as indirect purchasers, to seek relief under the Clayton Act and the UCL.

15  Specifically, with regard to the UCL cause of action, Defendants argued Plaintiffs had

16  not suffered a compensable loss because they were fully able to mitigate any injury by

17  passing on the overcharges to the consumer.  The California Supreme Court rejected

18  this contention, reasoning "this argument conflates the issue of standing with the issue

19  of the remedies to which a party may be entitled.  That a party may ultimately be unable

20  to prove a right to damages (or, here, restitution) does not demonstrate that it lacks

21  standing to argue for its entitlement to them."  *Id.* at 788.  The court held, therefore, "the

22  right to seek injunctive relief under section 17203 is not dependent on the right to seek

23  restitution; the two are wholly different remedies."  *Id.* at 790.  Thus, a plaintiff who may

24  not have a restitution claim could still seek injunctive relief under the UCL, so long as

25  the plaintiff had suffered a monetary loss as a result of the alleged unfair business

26  practices.  *Id.*[4]

27  _____

28         [4]  Plaintiff also cites *Hall v. Time*, 158 Cal. App. 4th 847, 854 (2008) (for the proposition
    B&P Code § 17204 "requires only that a plaintiff has 'expended money due to the defendant's
    acts of unfair competition'");  *Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 802-803

*Clayworth* and the other state court cases cited by Plaintiff are simply not controlling here.  The decisions address standing under the UCL, not the standing requirement of Article III, which determines whether a federal court has jurisdiction over a claim or part of a claim.  Thus, even if *Clayworth* stands for the proposition that standing to pursue injunctive relief under the UCL only requires a past injury, and the threat or possibility of ongoing harm is irrelevant, as Plaintiff posits, it would not negate the inquiry as to whether Plaintiff has standing under Article III.  Even if Plaintiff had standing to seek injunctive relief in state court, he cannot pursue that form of relief in federal court if he does not establish standing under Article III.  *See e.g., Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) (stating a "plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury"); *Midpeninsula Citizens for Fair Housing*, 221 Cal. App. 3d at 1386 (while discussing standing under the UCL, the court observed that California courts are not constrained by the more restrictive case and controversy requirement of Article III.)

The cases on which Defendant primarily relies specifically address the require-ments of Article III.  *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007); *Laster v. T-Mobile USA, Inc.*, 2009 U.S. Dist. LEXIS 116228, at 3-4 (S.D. Cal. Dec. 14, 2009).  In *Cattie*, the plaintiff alleged the thread count of linens she purchased from the defendant's website was lower than advertised.  *Cattie*, 504 F. Supp. 2d at 941.  She filed a putative class action, seeking to enjoin the defendants from "engaging in the false advertising and marketing campaign," and a declaration that they had violated the UCL and the False Advertising Law ("FAL").  *Id.* at 951.  Defendant states "[t]he *Cattie* court found it lacked jurisdiction because it was unclear that prospective

(2006) (as an example of where "plaintiff had standing to pursue UCL action because he suffered economic loss be *(sic)* being required to purchase excess fuel"), and *Midpeninsula Citizens for Fair Housing v. Westwood Investors*, 221 Cal. App. 3d 1377, 1393 (1990) (cited as "holding that a 'representative organization which does not have ... standing under the Unruh Act is nonetheless entitled, pursuant to [§ 17204], to seek injunctive relief from alleged violations of the act.'")  *Opp'n to MSJ*, p. 11.

1   relief could redress plaintiff's injury since she was then fully aware of the linens' thread

2   count, and because she failed to allege she would purchase linens from the defendant

3   in the future." *Mot. for Summ. J.*, p. 11.[5]

4          In *Laster*, the named plaintiffs in a putative class action claimed defendant had

5   violated the UCL, FAL, and CLRA because it had charged and collected sales tax on

6   the full retail value of a cell phone that was advertised as "free" or at a substantially

7   discounted price.  *Laster*, 2009 LEXIS 116228, at 3-4.  In considering defendants'

8   summary judgment motion, the Hon. Dana M. Sabraw relied on *Cattie* and found the

9   plaintiffs had established Article III standing to pursue their restitution claim because

10  they had alleged pecuniary injury, but held they did not have standing under Article III

11  for their declaratory and injunctive relief claims because their current knowledge that

12  defendants would seek sales tax reimbursement equal to the full retail price of the

13  phone(s) purchased precluded them from showing likelihood of future injury.  *Id.* at

14  8–10.

15         *In re Napster, Inc. Copyright Litigation*, 354 F. Supp. 2d 1113 (N.D. Cal. 2005),

16  which is also cited by Defendant but is not addressed by Plaintiff, is also instructive.  In

17  *Napster*, the defendant filed a counterclaim under the UCL, alleging plaintiff had

18  engaged in a conspiracy to restrain trade in the online music industry.  *Id.* at 1127.  The

19  court dismissed the UCL counterclaim on the basis no facts were alleged that would

20  entitle the defendant/counterclaimant to any of the remedies available under the UCL,

21  because it did not allege any ongoing injury from plaintiff's conduct and plaintiffs were

22  not in possession of the funds that would be the basis for a restitution remedy.  *Id.*

23         The reasoning of *Laster*, *Cattie* and *Napster* is highly persuasive.  Article III

24  imposes a jurisdictional requirement that is more stringent than the UCL, and which,

25

26          [5]  Plaintiff points out this aspect of *Cattie* is dicta since, in the course of considering a
     motion to dismiss filed by defendant raising other arguments challenging Plaintiff's standing,
27   the Hon. Larry A. Burns *sua sponte* expressed concern "that Plaintiff may lack standing to seek
     injunctive or declaratory relief" and remarked "it is questionable whether this Court can grant
     Plaintiff's requests for injunctive and declaratory relief."  *Cattie*, 504 F. Supp. 2d at 941.  As
28   discussed in the text, *infra*, even though this part of *Cattie* is dicta, the Court finds its reasoning
     to be persuasive.

1   with respect to Plaintiff's claim for injunctive relief, is not satisfied.  Plaintiff argues

2   *Clayworth* post-dates *Laster* and *Cattie*, but that argument is irrelevant.  Irrespective of

3   whether *Clayworth* can be interpreted as holding the UCL affords standing to pursue

4   injunctive relief even without the threat or possibility of ongoing harm, the relevant issue

5   here is whether standing is satisfied under Article III.

6          Plaintiff, as a matter of law, can not establish that he is under any threat of

7   suffering actual and imminent future harm.  Plaintiff's UCL claim is based entirely on a

8   past transaction, namely, Plaintiff's purchase of a home warranty plan from Defendant

9   and Defendant's subsequent denial of Plaintiff's claim for service of his garbage

10  disposal.  Plaintiff no longer has a warranty plan with Defendant and testified that he

11  does not ever intend to purchase another one.  Furthermore, even if Plaintiff were to

12  purchase another home warranty plan from Defendant, he now has knowledge of

13  Defendant's alleged misconduct.  Thus, Plaintiff cannot show he is realistically threat-

14  ened by a repetition of the alleged violation.  Without a showing there is an actual and

15  immediate threat that Plaintiff will be wronged again in the same way by Defendant,

16  Plaintiff lacks standing under Article III to seek injunctive relief.  *Gest*, 443 F.3d at 1181;

17  *Summers*, 555 U.S. at 493; *Lyons*, 461 U.S. at 493; *Laster*, 2009 U.S. Dist. LEXIS

18  116228 at 3–4.  Consequently, Defendant is entitled to summary judgment as to

19  Plaintiff's claims for injunctive relief.

### IV.  PLAINTIFF'S MOTION FOR LEAVE TO AMEND

21         Plaintiff's Motion for Leave to File a First Amended Complaint seeks leave to add

22  a new false advertising claim (Cal. Bus. & Prof. Code § 17500) and a new concealment

23  claim (Cal. Civ. Code § 1710(3)).  Plaintiff also seeks to revise the class definition which

24  had been all persons who, during the class period, made a claim under a home

25  warranty plan issued by Defendant, to include both persons who purchased and

26  received policies from Defendant, and to include a subclass that includes only persons

27  who made a claim that was denied, or was approved but where the policy holder had to

28  pay any amount above the trade call fee.  *Decl. of Francis A. Bottini in Supp. of Mot. for*

1  *Leave to File a First Amended Complaint*, Ex. A.

2  **A.   Legal Standard**

3  Generally, Fed. R. of Civ. P. 15(a) liberally allows for amendments to pleadings.

4  *Coleman v. Quaker Oats*, Co., 232 F.3d 1271, 1294 (9th Cir. 2000).  Once the Court

5  issues a pretrial scheduling order pursuant to Fed. R. Civ. P. 16(b) setting a deadline for

6  amending the pleadings, however, the Court must look to that rule in determining

7  whether amendment should be allowed.  *Johnson v. Mammoth Recreations, Inc.*, 975

8  F.2d 604, 607-08 (9th Cir. 1992).  Rule 16(b) requires the party requesting amendment

9  demonstrate "good cause" for seeking the amendment late.  *Johnson*, 975 F.2d at 608.

10  "'A court's evaluation of good cause [under Rule 16(b)] is not coextensive with an

11  inquiry into the propriety of the amendment under ... Rule 15.'"  *Id.* at 609 (citation

12  omitted). Rather, the "good cause" standard "primarily considers the diligence of the

13  party seeking the amendment."  *Id.*  "Although the existence or degree of prejudice to

14  the party opposing the modification might supply additional reasons to deny a motion,

15  the focus of the inquiry is upon the moving party's reasons for seeking modification.  If

16  that party was not diligent, the inquiry should end."  *Id.*  (internal citation omitted).  Once

17  "good cause" is shown, the moving party must also demonstrate the proposed amend-

18  ment would be proper under Rule 15.  *Id.* at 608.  Under Rule 15, leave to amend

19  should be granted unless amendment would cause prejudice to the opposing party, is

20  sought in bad faith, is futile, or creates undue delay or prejudice to the opposing party.

21  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

22  Under the Scheduling Order, any motion to amend pleadings must have been

23  filed by November 9, 2009.  [Doc. No. 17.]  Plaintiff did not file his motion to amend until

24  January 27, 2012—two years and two months past the deadline.  Accordingly, Plaintiff

25  must demonstrate "good cause" under Rule 16(b).  *See Johnson*, 975 F.2d at 607-08.

26  **B.   Plaintiff Has Not Demonstrated Good Cause under F.R.C.P. 16(b)**

27  Plaintiff argues he has been diligent in his prosecution and handling of the case

28  and that good cause exists to allow the amendment because he could not have

1    predicted the need for the amendment until his class certification motion had been

2    denied.  *Mot. for Leave to File a First Amended Complaint*, p. 7–9.   He argues he

3    became aware of the need to amend only after the Court denied his motion for recon-

4    sideration on May 20, 2012, but contends even then he was still unable to seek leave to

5    amend his Complaint because he was involved in settlement discussions until October

6    2011.  *Reply in Supp. of Mot. for Leave to File a First Amended Complaint*, p. 3–5.

7         Plaintiff's assertions have several fundamental flaws.  First, the new causes of

8    action – fraud and concealment – are not "new" theories, but rather legal theories that

9    have been manifest all along, and that could have been asserted from the outset, or if

10   not, certainly by the deadline to amend pleadings, and in no event later than Plaintiff's

11   first motion for leave to file an amended complaint.  Plaintiff's Complaint, in fact, already

12   includes a cause of action for intentional misrepresentation and concealment and a UCL

13   claim, which are both predicated on Plaintiff's allegations of deceptive advertising.

14   *Complaint*, pp. 12–16.  Plaintiff has advanced these theories and their factual

15   underpinnings since the inception of this case, and class certification of these claims

16   was fully considered and rejected by the Court.  [Doc. No. 30-1*, pp. 3–4, 16, 25–26;*

17   Doc. No. 56, pp. 21–27; Doc. No. 64, p. 10.]  There is no plausible reason, therefore,

18   why these proposed "new" causes of action could not have been sought to be included

19   long before now.

20        Second, Plaintiff has not acted with diligence to redefine the proposed class.

21   The motion for class certification was denied on January 6, 2011, over a year before

22   Plaintiff's motion for leave to amend was filed.  [Doc. No. 56].  The denial of the motion

23   was without prejudice to Plaintiff seeking to modify the proposed class definition and

24   attempting to certify an alternate class.  *Id.*   Instead of seeking leave to amend the

25   proposed class definition at that time, Plaintiff elected to file a motion for reconsideration

26   or, in the alternative, clarification.  [Doc. No. 58.]  The motion for reconsideration was

27   denied on May 20, 2012, also without prejudice to Plaintiff pursuing an alternate class

28   theory.  [Doc. No. 64.]  Plaintiff, however, still did not seek to amend his class definition

at that point.  Instead, during a Case Management Conference on June 14, 2011, Mr. Bottini informed counsel and the Court that Plaintiff did not plan to appeal the Court's denial of the motion for class certification, or to try to obtain certification of another class, and intended to proceed with his individual claims for injunctive relief under the CLRA and the UCL.  [Doc. No. 70.]  It was this development that was the impetus for the settlement discussions that Plaintiff now claims prevented him from seeking to amend his class definition earlier.

The settlement discussions lasted only a few months.  During the Case Management Conference that was held on September 9, 2012, it was apparent the settlement talks were not likely to be successful, and on October 12, 2012, during another Case Management Conference, counsel reported settlement negotiations had completely broken down and that Defendant intended to file a summary judgment motion challenging Plaintiff's CLRA claim and request for injunctive relief.  [Doc. No. 76 & 78.]  Plaintiff's counsel again stated he intended to move forward toward trial of Plaintiff's individual claims for injunctive relief, and made no mention of any plans to seek to amend the Complaint to assert a new class definition.

Defendant's motion for summary judgment was filed on October 28, 2012, and because it was originally set for hearing on January 20, 2011, briefing was completed on January 13, 2012.  [Doc. No. 79 & 86.]  Nonetheless, despite having ample time and numerous opportunities to do so, Plaintiff did not seek leave to file an amended complaint until January 27, 2012.  Given the considerable amount of time that has lapsed since Plaintiff's motion for class certification was denied, the ample opportunities he has had to pursue an alternate class theory, and his counsel's representations after the denial of the motion for reconsideration that the case would be pursued as an individual action, the Court does not find that Plaintiff has been diligent or established good cause to allow the proposed amendment.

Although the inquiry as to whether an amendment should be permitted should end at this point, the Court can also – but does not have to – look at the prejudice to

09cv748-JMA(NLS)

1  Defendant in determining whether Plaintiff's late motion to amend should be granted or

2  denied.  In this case, the parties have already completed substantial discovery and

3  Plaintiff did not seek leave to amend until after Defendant's motion for summary

4  judgment had been fully briefed.  These reasons also weigh in favor of denying Plain-

5  tiff's late motion to amend.  *See Matsumoto v. Republic Ins. Co.*, 792 F.2d 869, 872 (9th

6  Cir. 1986) (holding the district court did not abuse its discretion in denying motion to

7  amend where discovery had already commenced and defendant's motion for summary

8  judgment was pending); *Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir.

9  1981) (holding the district court did not abuse its discretion in denying leave to amend

10  where the "issue was raised at the eleventh hour, after discovery was virtually complete

11  and [defendant's] motion for summary judgment was pending before the court").

12  **C.    Plaintiff Also Has Not Satisfied F.R.C.P. 15(a)**

13       Furthermore, even if Plaintiff could establish good cause under Rule 16(b), he

14  would still have to demonstrate the amendment would be proper under Rule 15(a).

15  Although leave to amend is liberally granted under Rule 15(a), undue delay, bad faith in

16  seeking amendment, or undue prejudice to the party opposing amendment are grounds

17  for denying leave to amend.  *Foman*, 371 U.S. at 182; *M/V American Queen*, 708 F.2d

18  at 1492; *Roberts*, 661 F.2d at 798.  As discussed in connection with the Court's

19  consideration of Rule 16(b), Plaintiff has engaged in undue delay in seeking leave to

20  amend his Complaint, and permitting the amendment would unduly prejudice Defen-

21  dant.  *See also Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393,

22  1398 (9th Cir. 1986) (district court's denial of motion to amend on basis of undue

23  prejudice to Defendant under Rule 15(a) was not abuse of discretion, where late

24  inclusion of a cause of action previously available to plaintiff was sought in order to

25  avoid possibility of adverse summary judgment ruling).  Moreover, late amendments to

26  assert new theories are not viewed favorably when the facts and the theory have been

27  known to the party seeking amendment since the inception of the cause of action.  *Id.*,

28  *citing M/V American Queen*, 708 F.2d at 1492; *Stein v. United Artists Corp.*, 691 F.2d

885, 898 (9th Cir. 1982).

### V. CONCLUSION

Based on the foregoing, the Court finds that Defendant's home warranty plans are not "services" within the meaning of the CLRA and that Plaintiff does not have standing under Article III to pursue injunctive relief.  Defendant's Motion for Summary Judgment is, therefore, GRANTED.  The Court further finds that Plaintiff has not demonstrated good cause to allow the amendment of his Complaint under Rule 16(b) and, even if he had done so, he has not satisfied the more liberal requirements of Rule 15(a).  Accordingly, his motion for leave to amend is DENIED.

DATED:  March 23, 2012

Jan M. Adler
U.S. Magistrate Judge

09cv748-JMA(NLS)